Vermont Electric Supply Company, Inc. v. William N. Andrus, Town and Country Kitchens, Inc., David M. Daggett and Lee Faucette

[315 A.2d 456]

No. 89-73

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed February 5, 1974

196

*Dick, Hackel & Hull,* Rutland, for Plaintiff.

*J. Fred Carbine, Jr., Esq.,* Rutland, for Defendants.

**Barney, J.** This is a suit to enforce a former employee's agreement not to compete. The lower court issued an injunction enforcing the agreement against the employee, defendant Andrus, and the company with which he is presently associated, Town and Country Kitchens, Inc. Defendants Faucette and Daggett were also involved as co-directors and founders of Town and Country Kitchens, Inc., along with defendant Andrus. Daggett has since left the organization, and his stock holdings divided between Andrus and Faucette. The trial court declined to award damages to the plaintiff, on the ground that the evidence on that issue was insufficient. As a consequence, both sides have appealed.

The plaintiff, Vermont Electric Supply Company, has been engaged in the sale of kitchens and kitchen installations since 1946. In 1966 the defendant, William Andrus, was

hired as a salesman, devoting the bulk of his time to kitchen design and sales. After a year, he was asked to sign an agreement not to compete in Rutland County, in the business of selling, designing, laying out or displaying kitchens or kitchen cabinets for a period of five years after his employment with the plaintiff ceased. In return he was to receive education about kitchen designs and sales. The agreement applied to the defendant whether he was working for himself, or for any other person or corporation.

The defendant signed the agreement, which took the form of a letter addressed to the plaintiff. He was then sent to various educational programs relating to kitchen design, among other things, becoming one of the first Vermont graduates of the American Institute of Kitchen Design. He was enrolled in the Vermont Builders Association, and attended their meetings. He was sent to manufacturing plants to study methods. The defendant was also made privy to the cost factors involved in pricing installations of the plaintiff. He was instructed in the plaintiff's methods of presentation, including the use of perspective drawings and the preparation of quotations. The plaintiff had the defendant introduced to builders all over Vermont.

The defendant Andrus moved up in the plaintiff's organization, eventually managing its kitchen department, with four salesmen and a draftsman under him. In early 1971, at his own request, the defendant reverted to salesman and had substantial earnings based on commissions. Defendant was a native of Rutland County, and, through his work, developed a close personal relationship with many of the builders of Rutland County.

In the spring of 1972 defendant Faucette approached defendant Andrus with the proposal that they go into business in Manchester, Vermont. Andrus approached defendant Daggett, and the three incorporated Town and Country Kitchens, Inc., opening the business in Manchester, in Bennington County. Defendant Andrus gave notice to the plaintiff in May, 1972, that he was leaving to go into business for himself. The agreement was called to his attention at that time, but he was wished well in his new venture.

The findings disclose that the new venture was successful, and that there was substantial amount of business activity

in kitchen sales and installation carried on in Rutland County, largely through the efforts of defendant Andrus. By the end of 1972, 16 kitchens had been sold there for a gross sale price of $19,198.95. This represented 15% of the new company's gross sales. In 1973 up until February, six more kitchens were sold in Rutland County, at an average price of $1,300.00 apiece. The trial Court found that the plaintiff's profit margin on kitchen jobs was 28.32%, with a 59% success in bidding, statewide.

The defendant Andrus attacks the lower court's injunctive order on two grounds. First, he says, the non-competitive agreement should have been held unenforcible as an unreasonable restraint of trade, in the light of the circumstances of this case. Second, he contends that the lower court should have ruled the agreement ineffective in view of the unequal bargaining power between the defendant Andrus and the plaintiff at the time it was signed.

 Since non-competitive employment provisions operate as a restraint, they run counter to that public policy favoring the right of individuals to freely engage in desirable commercial activity. Restrictions on doing business or on the exercise of an individual's trade or talent are subject to scrutiny for reasonableness and justification. *Cross-Abbott* v. *Howards, Inc.*, 124 Vt. 439, 444, 207 A.2d 134 (1965). As has been many times said, courts must proceed with caution in enforcing such restrictive contracts. *Dyar Sales & Machinery Co.* v. *Bleiler,* 106 Vt. 425, 432, 175 A. 27 (1934). The tests suggested in that case are that enforcement will be ordered unless the agreement is found to be contrary to public policy, unnecessary for protection of the employer, or unnecessarily restrictive of the rights of the employee, with due regard being given to the subject matter of the contract and the circumstances and conditions under which it is to be performed. The burden of establishing such facts is on the employee. *Dyar Sales & Machinery Co.* v. *Bleiler, supra,* 106 Vt. at 434.

The lower court was not persuaded by the evidence of the defendant Andrus that justification for refusing to enforce the restrictive agreement had been established. In the light of the proof, this Court cannot say this was error. The terms

of the arrangement were plain and not unreasonable as a matter of law. The area involved was Rutland County, and the defendants had elected to establish their business outside of that county already. After five years, all restrictions were at an end.

A further consideration involved here is that this case deals with an employee who voluntarily left his employer for the very purpose of going into business competitively in the same special field. He was not placed in the double bind of being both fired and subject to five years of employment restraint. His expertise and reputation in the kitchen installation business arose through special training and experience furnished by the plaintiff. His relationships with builders and contractors in the area, the prime source of business, were the product of plaintiff's initial sponsorship. He had been entrusted with intimate knowledge of the plaintiff's cost and profit factors, as well as its techniques of presentation and bidding. The potential for harm to the plaintiff's business was certainly established, and the restrictions agreed to were not unreasonable under the circumstances. The injunctive relief is adequately supported. *Abalene Pest Control Service* v. *Hall*, 126 Vt. 1, 220 A.2d 717 (1966).

With respect to the claim that the unequal bargaining power of the parties at the time of its execution made the restrictive agreement vulnerable as coerced, the findings do not support such a contention. The facts do demonstrate that the defendant Andrus worked for the plaintiff for about five years after the signing of the agreement, which took place without protest. During that period his earnings went from $125.00 a week in 1967 to about $18,000.00 a year for 1971. When he left to open his own business, although he was reminded of the agreement, he apparently, even then, raised no protest against the restriction he now contends is coercive. In fact, as the evidence shows, the arrangement was mutually advantageous for both Andrus and the plaintiff, and, having had the benefits, it is to be expected that the trial court would be unlikely to accept his recent contention of coercion, first raised when the time came for the defendant to carry out his end of his bargain.

■■ There remains the question of damages. The lower court declared that the evidence was insufficient to support any award of damages. We disagree, and must remand on that issue. While it is not for this Court to determine damages as a matter of law from evidence that might well support some variation in adjudication, we can say that the findings disclose evidence from which an award can be computed. Undoubtedly, more detailed evidence might be more helpful, and might, indeed, increase the level of a supportable award. However, there was enough to require the lower court to evaluate the issue.

■■ The lower court also concluded that defendant Faucette had, in the eyes of the law, interfered with the contractual relations between the plaintiff and defendant Andrus. This is a tort, under *Mitchell* v. *Aldrich*, 122 Vt. 19, 163 A.2d 833 (1960), but received no recognition in any damage award to the plaintiff. Absent some exceptional consideration, the violation of a legal right carries with it the right to damages, however small. *Fullam* v. *Stearns*, 30 Vt. 443, 454–57 (1857). The trier is not to be deterred from this duty by the fact that the damages are not susceptible of reduction to an exact money standard. Evidence allowing estimation of an amount with reasonable certainty is sufficient, in such a case, to call for the exercise of sound judgment and require a decision. *G & H Holding Co.* v. *Dutton*, 118 Vt. 406, 412, 110 A.2d 724 (1955).

*The judgment awarding injunctive relief is affirmed and the cause is remanded for the computation of damages.*