# Fine Foods, Inc. and Fred Rappaport v. Thomas E. Dahlin and Taft's Delectables, Inc.

[523 A.2d 1228]

No. 85-256

Present: **Allen, C.J., Hill, Peck and Gibson, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed December 5, 1986

Motion for Reargument Denied January 13, 1987

600

*William M. McCarty*, Brattleboro, for Plaintiffs-Appellees.

*Thomas M. French*, Brattleboro, for Defendant-Appellant.

**Peck, J.** Defendant appeals from a decree of the Windham Superior Court enforcing a covenant not to compete and enjoining defendant from continuing to be connected, in any way, with the restaurant business of the Old Newfane Inn located in Brattleboro, Vermont. We affirm in part and remand for further proceedings.

Four claims of error are before this Court for review: (1) that the trial court failed to narrowly construe the language of the covenant not to compete; (2) that the court's conclusion that defendant should be enjoined from continuing employment as "maitre d' " of the Old Newfane Inn is not supported by the evidence; (3) that the trial court improperly took judicial notice of the distance between the Old Newfane Inn and Taft's Restaurant; and (4) that the evidence is not sufficient to support the trial court's award of attorney's fees.

The essential facts are not in dispute. Defendant was part owner of Taft's Delectables, Inc., d/b/a Taft's Restaurant, located in Brattleboro, Vermont. The business had been a successful venture, in large measure due to defendant's experience, skill and personality. On December 3, 1983, defendant and his partner entered into an agreement with plaintiffs whereby they would sell to the latter the real and personal assets of their business for the sum of $240,000. The purchase and sales agreement provided, inter alia, that defendant and defendant's corporation, Taft's Delectables, Inc., would execute and deliver a covenant not to compete to the plaintiffs.

On the date of the closing, February 4, 1984, defendant delivered an executed covenant not to compete. This covenant provided in pertinent part:

> 1. That in consideration of the sum of Five Thousand and no/100 ($5,000.00) Dollars, . . . Thomas E. Dahlin . . . agree[s] . . . he will not . . . for a period of five years . . . directly or indirectly, either as a principal agent, manager, owner, partner (dormant or otherwise), stockholder, director, or officer of a corporation, or otherwise engage in or become interested financially or otherwise in any business, trade or occupation similar to or in competition [with] a restaurant or similar business within a radius of twenty-five miles of the Town of Brattleboro.

The covenant further set forth that defendant would be liable for attorney's fees if he breached the agreement.

In December of 1984, the defendant accepted the position of "maitre d'" at the Old Newfane Inn in Brattleboro, Vermont. Defendant's duties included greeting dinner guests, showing them to their tables, taking cocktail orders, lighting candles at the table, flambeing, carving meats, and serving wine. Performance of these duties earned defendant fifteen dollars per night plus a portion of the tips received by the waitresses.

Defendant notified plaintiffs of his acceptance of the position. Subsequently, plaintiffs informed defendant that this employment violated the covenant not to compete and that continued violation would result in further action. Defendant continued his employment, and a complaint was filed by plaintiffs on January 14, 1985. The trial court held for plaintiffs, finding that defendant had violated the covenant not to compete by accepting employ-

ment in the restaurant business within a twenty-five mile radius of Brattleboro before the five-year period had expired.

Defendant's first claim of error is that the trial court improperly construed the language of the covenant and failed to apply the law narrowly. "A covenant is a contract, . . . ." and the rules of construction are well settled. *Pinckard* v. *American Freehold Land Mortgage Co.*, 143 Ala. 568, 571, 39 So. 350, 351 (1904). As we stated in *Roy's Orthopedic, Inc.* v. *Lavigne*, 145 Vt. 324, 326, 487 A.2d 173, 175 (1985), "[t]he courts must enforce contracts as they are written . . . ." The law holds parties to the plain and express language of their contracts. *Id.* Where the language of a contract is clear, the common meaning of the words chosen to articulate the agreement or promise binds the parties. *Id.*

The operative language of the covenant not to compete is the phrase "engage in or become interested financially or otherwise in any business, trade or *occupation* similar or in competition [with] a restaurant." (Emphasis added). Plaintiffs maintain, and the trial court found, that defendant's employment in the restaurant business is prohibited by this language. Plaintiffs argue that while the term "employment" is not specifically included in the covenant, the term "otherwise" incorporates the concept of "employment."

Notwithstanding plaintiffs' argument, we agree with the trial court that whether defendant may be employed in the restaurant business depends instead on the meaning of the word "occupation." Black's Law Dictionary defines occupation as: "[t]hat which principally takes up one's time, thought, and energies, especially, one's regular business or employment . . . ." Black's Law Dictionary 973 (5th ed. 1979). Other sources characterize "occupation" as a generic term that is very comprehensive in meaning. 67 C.J.S. *Occupation.* Although the word is variously defined, its definition includes: "the employment in which one engages, . . . the state of being occupied or employed in any way; . . . ." *Id.*

There is no doubt that more precise language was available to the parties when drawing up the covenant not to compete. Nevertheless, had there been a conscious attempt to limit defendant's proprietory and managerial involvement only, the word "occupation" might not have been included. However, the word was included, and we will read the covenant as it is before us, and may not ignore its provisions. *Roy's Orthopedic, Inc.* v. *Lavigne,*

*supra*, 145 Vt. at 326, 487 A.2d at 175. Thus, we conclude that defendant's employment in the restaurant business for five years and within a radius of twenty-five miles is prohibited by the covenant.

Nevertheless, we must examine the employment restriction in the light of the applicable law. "When this Court is asked to enforce restrictive covenants against competitive employment, we will proceed with caution . . . ." *Roy's Orthopedic, Inc.* v. *Lavigne*, 142 Vt. 347, 350, 454 A.2d 1242, 1244 (1982). Restraints against competitive employment conflict with the public policy " 'favoring the right of individuals to freely engage in desirable commercial activity.' " *Id.* (quoting *Vermont Electric Supply Co.* v. *Andrus*, 132 Vt. 195, 198, 315 A.2d 456, 458 (1974)). Whenever an individual's trade or talents are restricted, we scrutinize the reasonableness and justification for such a restriction. *Id.* Restrictive agreements will be enforced by the courts, " 'unless the agreement is found to be contrary to public policy, unnecessary for protection of the employer, or unnecessarily restrictive of the rights of the employee, with due regard being given to the subject matter of the contract and the circumstances and conditions under which it is to be performed.' " *Id.* (quoting *Vermont Electric Supply Co.* v. *Andrus, supra*, 132 Vt. at 198, 315 A.2d at 458).

The findings of the trial court, though inartfully phrased, did not indicate deviation from the standards of review set forth above. Inquiries regarding time and place restrictions are crucial to a determination of whether a covenant not to compete unduly restricts the rights of an individual. *Id.* With respect to time, this Court has approved a covenant containing a five-year restriction of competitive employment. See *Vermont Electric Supply Co.* v. *Andrus, supra,* 132 Vt. at 199, 315 A.2d at 458.

Nor do geographic limitations of the covenant appear unduly restrictive. Outside the 25-mile limit, defendant may own, manage or become employed in the restaurant business. The point was not raised for consideration on appeal, and there is no indication from the record or the defendant's brief that this unduly restricts him.

An additional concern is the monetary consideration received by defendant in exchange for the sale of the business and the executed covenant not to compete. The covenant was a primary part of the transaction. Indeed, the purchase and sales agreement spe-

cifically refers to the subsequent delivery of the executed covenant on the date of closing. In addition, a sum of five thousand dollars was paid for the executed covenant alone. Under the circumstances, the restrictions agreed to were reasonable to time and place.

■ Defendant further maintains that the trial court's findings do not support the decree enjoining his participation in the restaurant business. Essentially, defendant argues that the covenant not to compete must be construed narrowly, and that the trial court's conclusion is erroneous. It is well settled that when conclusions are not supported by the findings, they cannot stand. *Dartmouth Savings Bank* v. *F.O.S. Associates*, 145 Vt. 62, 66, 486 A.2d 623, 625 (1984). We agree that when competitive employment is restricted, narrow interpretation of the covenant is proper. *Roy's Orthopedic, Inc.* v. *Lavigne, supra*, 142 Vt. at 351, 454 A.2d at 1244. As we have stated above, however, the trial court correctly construed the covenant. This construction, which is supported by the evidence and set forth in the findings, leads to a proper conclusion that defendant should be enjoined from violating the covenant not to compete. The injunctive relief granted is supported by the findings.

■ Next, the defendant complains that the trial court improperly took judicial notice of the distance between the Old Newfane Inn and Taft's Restaurant. Under V.R.E. 201(b), "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Judicial notice is discretionary; "[a] court may take judicial notice, whether requested or not." V.R.E. 201(c). The distance from the Old Newfane Inn to plaintiffs' restaurant in Brattleboro is a fact which the trial court could accurately determine from unquestionable sources, and, thus, judicial notice was within its discretion.

■ Defendant also argues that the trial court should not have taken judicial notice of the distance between the two restaurants after the close of the evidence. This, defendant claims, precluded his opportunity to be heard on the matter. The claim has no merit. Pursuant to V.R.E. 201(f) a court may take judicial notice at any stage of the proceeding, and this includes appellate proceedings which certainly occur most often after the close of the

evidence. See V.R.E. 201, Reporter's Notes. In addition, V.R.E. 201(e) provides that, once the defendant received the trial court's order, he could have made a timely request for "an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed." Defendant failed to make such a timely request.

■ Lastly, we address defendant's claim that the evidence admitted at trial does not support the trial court's award of attorney's fees. Where courts are called upon to set reasonable attorney's fees, the determination must be made pursuant to the formula set forth in *Platt* v. *Shields*, 96 Vt. 257, 269, 119 A. 520, 525 (1923). See *Young* v. *Northern Terminals, Inc.*, 132 Vt. 125, 128, 315 A.2d 469, 471 (1974). Determining what would be a reasonable fee in a particular matter is ordinarily a question of fact. *Id.* at 129, 315 A.2d at 471. No fixed standard exists by which to measure reasonableness, and several factors must be considered. These are: the nature and importance of the business, the professional standing and attainments of the attorney, the usual prices charged by other attorneys for similar services in the same vicinity and in the same court, the amount of time and labor involved, the importance of the matter, and the responsibility assumed and carried. *Platt, supra*, 96 Vt. at 269, 119 A. at 525. These factors are also listed in the Code of Professional Responsibility DR 2-106, 12 V.S.A. App. IX.

At trial the plaintiff testified he had received a bill from his attorney for $3,025. Defendant objected that no foundation for the reasonableness of these fees had been established. The trial court overruled the objection, stating that the reasonableness issue would remain open. However, the issue was not addressed further at trial.

■ While a trial court may rely on its own experience and knowledge when determining attorney's fees, evidence of the reasonableness of the fees prayed for should be available for consideration. See *Young* v. *Northern Terminals, Inc., supra*, 132 Vt. at 130, 315 A.2d at 473. Evidence of this sort was not available to the court in the instant case because none was admitted. Reliance by the trial court on the theory of judicial notice was not appropriate because the issue involved controverted facts and not matters of common knowledge. *Vermont National Bank* v. *King*, 135 Vt. 551, 552, 382 A.2d 210, 211 (1977). Therefore, the trial court's finding with respect to attorney's fees is not supported by the evi-

dence, and the award is without foundation. We remand the issue of attorney's fees for an evidentiary hearing with findings and judgment founded thereon.*

*Affirmed in part and remanded for determination of reasonable attorney's fees.*

---

* For a general discussion of the issue of attorney's fees, see *Parker, Lamb & Ankuda, P.C.* v. *Krupinsky*, 146 Vt. 304, 503 A.2d 531 (1985).