A.N. DERINGER

v.

John STROUGH and Fritz Companies, Inc.

Civil No. 1:95CV75.

United States District Court, D. Vermont.

Feb. 28, 1996.

Christopher J. McVeigh, Paul Frank & Collins, Inc., Burlington, VT, for Plaintiff.

Heather Briggs, Downs Rachlin & Martin, P.C., Burlington, VT, for Defendants.

### RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

(papers 38 and 41)

MURTHA, Chief Judge.

#### I. Background

Each party moving for summary judgment has an initial burden of informing the Court of the basis for its motion and of identifying those parts of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Latimer v. Smithkline and French Laboratories,* 919 F.2d 301, 303 (5th Cir.1990) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Where a motion for summary judgment is supported by affidavits or other documentary evidence, the party opposing that motion must set forth specific facts which show there is a genuine, material issue for trial. *See King Service, Inc. v. Gulf Oil Corp.,* 834 F.2d 290, 295 (2d Cir.1987). Accordingly, for an opposing party to resist entry of summary judgment, it must come forward with enough evidence to support a verdict in its favor. It cannot defeat a properly supported motion merely by presenting metaphysical doubt, conjecture or surmise concerning the facts. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Borthwick v. First Georgetown Securities, Inc.,* 892 F.2d 178, 181 (2d Cir.1989). Only disputes over facts which must affect the outcome of the suit under the governing law preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Upon review of the submissions of the parties, the Court finds the following facts undisputed. *See* Local Rule 5(c)(1)(B). The plaintiff, A.N. Deringer, Inc. (hereinafter "Deringer"), is a customs broker with offices located at numerous locations on the United States' border with Canada. From 1984 through 1994, defendant John M. Strough worked for Deringer as a customs classifier. Although Mr. Strough had access to customer lists and other confidential information, Deringer never asked Strough to sign a confidentiality agreement during his first ten years at the company.

In the summer of 1994, Strough applied for a sales position with Deringer. When he applied for the position, Deringer informed Strough that he would be required to sign a covenant not to compete as a condition of his employment as a sales representative. *See* Paper 40 at Exhibits 1, 3 and 5. His refusal to sign the Agreement would have resulted in his firing from the sales position.

In August 1994, Strough accepted the sales position. On November 9, 1994, Deringer paid Mr. Strough $1000 to execute a Confidentiality and Trade Secret Agreement (hereinafter "the Agreement"). *See* Paper 40 at Exhibit 3. In relevant part, the Agreement provides:

> *Non-competition.* During the time I am employed by Deringer, I will devote my full-time, best efforts to the interest and business of Deringer. During the period of my employment and for a period of ninety (90) days after termination of my employment (whether voluntary or involuntary), I will not compete directly or indirectly with Deringer within the Prohibited Geographic Area. As used herein, "compete" shall mean to participate, directly or indirectly, for my own account or for the account of another, as an owner, shareholder, partner, director, officer, employee, agent, consultant or in any other manner in any business or entity which is in the customhouse brokerage, ocean or air freight forwarding, airline freight, truck line freight, or steamship agency, or air or ocean freight consolidator business. "Prohibited Geographic Area" shall mean any location within a 100–mile radius of any office of Deringer or any Related Corporation in existence during the period of my employment. . . .

An attachment to the Agreement lists 30 Deringer offices in existence as of February 22, 1994. These offices virtually blanket the border between the United States and Canada. The Agreement also contains a confidentiality and a non-solicitation provision, neither of which the plaintiff has accused Mr. Strough of violating.

Deringer has articulated two reasons for the Agreement's non-competition provision. First, the provision provides Deringer with 90 days to contact its clients and introduce them to a new salesperson. Second, the provision helps protect Deringer's trade secret and confidential client information. *See* Transcript of Injunction Hearing (appended to paper 40 as Exhibit 1) at 50; Deposition of Robert A. Perkins (appended to paper 40 as Exhibit 5) at 15–16.

During the summer of 1994, the Plaintiff also applied for a job with Defendant Fritz Companies, Inc. (hereinafter "Fritz"), a competitor of Deringer. However, Fritz did not contact Mr. Strough until February 15, 1995. Because Mr. Strough was a licensed customs broker, Fritz offered him a job as a branch manager in one of the new offices the company was establishing in northern New York. When Strough mentioned the non-competition agreement he had signed with Deringer, a Fritz official told Strough that he did not believe the Agreement was enforceable and that he should not worry about it.

On February 22, 1995, Mr. Strough resigned from Derringer. The next day, he began working for Fritz in its Highgate Springs, Vermont office.

Seeking to enforce the Agreement, Deringer filed this suit in Franklin County Superior Court on or about March 3, 1995. Citing diversity jurisdiction, the defendants removed the action to this Court on March 15, 1995.

On March 21, 1995, this Court (Parker, J.) found it likely that Deringer would succeed on the merits, granted its Motion for Preliminary Injunction, and directed Mr. Strough to comply with the non-competition clause of the Agreement. *See* Paper 8. As a result, Mr. Strough was unable to work in the prohibited Geographic Area until May 24, 1995,

when the 90 day non-competition period expired. Presently before the Court are the parties' cross-motions for summary judgment.

## II. Discussion

Because non-competition employment provisions "run counter to that public policy favoring the right of individuals to freely engage in desirable commercial activity," Vermont courts view such agreements with caution. *Vermont Electric Supply Co. v. Andrus*, 132 Vt. 195, 315 A.2d 456, 458 (1974). "Restrictions on doing business or on the exercise of an individual's trade or talent are subject to scrutiny for reasonableness and justification." *Id.*

To determine whether an agreement is unduly restrictive, the Court must consider whether the covenant not to compete is reasonably limited to time and place. *See Roy's Orthopedic, Inc. v. Lavigne*, 142 Vt. 347, 454 A.2d 1242, 1244 (1982). "Restrictive agreements will be enforced by [Vermont] courts unless the agreement is found to be contrary to public policy, unnecessary for protection of the employer, or unnecessarily restrictive of the rights of the employee, with due regard being given to the subject matter of the contract and the circumstances and conditions under which it is to be performed." *Fine Foods, Inc. v. Dahlin*, 147 Vt. 599, 523 A.2d 1228, 1230 (1986) (citations and quotations omitted).

When compared to other agreements enforced by Vermont courts, the instant 90 day time limitation is reasonable. *Cf.* 523 A.2d at 1230. However, the Court concludes the prohibition against employment within 100 miles of any Deringer office is unreasonable in that it operates as a near total ban on a former employee's ability to secure similar work on the Canadian border. *See* Transcript of Injunction Hearing at 21 (Deringer offices "are located across the entire Canadian border, from Blaine, Washington to the northern most tip of Calais, Maine. We cover every major border crossing and artery....") As far as the Court can discern, this geographical restriction exceeds any other such restriction upheld by the Vermont Supreme Court. *Cf. Vermont Electric Supply*, 315 A.2d at 458 (Rutland Coun-

ty); *Fine Foods*, 523 A.2d at 1231 (25 miles from Brattleboro).

Furthermore, on its face, the provision far exceeds that which is necessary to protect the interest of the employer. Deringer's interest in making sure it has a reasonable time period to contact a former salesperson's customers can be protected by prohibiting a former employee from working for 90 days near his or her former sales territory. For example, Mr. Strough serviced the Montreal area. The record does not suggest any additional protection which Deringer derives by prohibiting Mr. Strough from working for another employer located near a Deringer office hundreds of miles from Montreal. Likewise, the record does not support a conclusion that Deringer derives additional trade secret protection from enforcing its broad geographic prohibition. Accordingly, the Court finds the instant non-competition clause unenforceable as unreasonably broad and without adequate justification.

 "[T]o be liable for interference with a contractual relationship, the defendant must have intentionally and improperly induced or caused the owner not to perform under its contract with the plaintiff." *Williams v. Chittenden Trust Co.*, 145 Vt. 76, 484 A.2d 911, 913 (1984). Because the Agreement provision at issue is unenforceable, Fritz cannot be held liable for tortious interference.

Finally, in the event the Court finds the Agreement unenforceable, the plaintiff invites the Court to reinterpret it in a way which would make it unobjectionable. The Court must decline the invitation because such a holding would constitute a prohibited advisory opinion. *See Olin Corp. v. Consolidated Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir.1993).

### Conclusion

The plaintiff's Motion for Summary Judgment (paper 41) is DENIED. The defendants' Motion for Summary Judgment (paper 38) is GRANTED.

SO ORDERED.