A.N. DERINGER, INC., Plaintiff–
Appellant,

v.

John M. STROUGH and
Fritz Companies, Inc.,
Defendants–Appellees.

No. 391, Docket 96–7368.

United States Court of Appeals,
Second Circuit.

Argued Oct. 11, 1996.

Decided Dec. 31, 1996.

---

244

Christopher McVeigh, Burlington, VT, for Plaintiff–Appellant.

Peter B. Robb, David W. Gartenstein, Brattleboro, VT, for Defendants–Appellees.

Before: CARDAMONE, Circuit Judge * and RESTANI, U.S. Court of International Trade Judge. **

RESTANI, Judge:

Petitioner-appellant A.N. Deringer, Inc. ("Deringer") appeals from a decision of the United States District Court (Murtha, J.) for the District of Vermont, granting summary

---

* The Honorable J. Daniel Mahoney, who was a member of the panel, died on October 23, 1996, and the appeal is being decided by the remaining two members of the panel, who are in agreement. *See* Local Rule § 0.14(b).

** Hon. Jane A. Restani of the United States Court of International Trade, sitting by designation.

judgment for defendants and denying enforcement of a non-competition provision in an employment agreement. For the reasons set forth below, we reverse and remand for determination of damages and attorney's fees.

## PROCEDURAL AND FACTUAL BACKGROUND

Deringer is a customs broker and former employer of appellee John M. Strough ("Strough"). Strough is currently employed by co-appellee Fritz Companies, Inc. ("Fritz"), a customs broker and competitor of Deringer. Strough worked for Deringer from 1984 through February 1995. In 1994 he applied for a sales position at Deringer, which he obtained in October 1994. In November 1994, Strough executed a Confidentiality and Trade Secret Agreement (hereinafter "the Agreement") in exchange for $1,000. The Agreement provided that for ninety days after the termination of his employment, Strough would not compete with Deringer, directly or indirectly, within a prohibited geographic area consisting of a 100–mile radius around any Deringer office. Deringer has at least 30 offices, many along the United States' border with Canada. Further, Deringer and Strough agreed:

Although both of us consider the foregoing restriction to be reasonable for the protection of Deringer, if it is found by a court to be unreasonable because it is overly broad as to time period, geographic area or otherwise, then and in that case, the restriction shall nevertheless remain effective, but shall be considered amended in such manner so as to make the restriction reasonable as determined by such court and as so amended shall be enforced.

(Confidentiality and Trade Secret Agreement; App. at 11). The Agreement also provided that Deringer would be entitled to enjoin Strough from breaching the Agreement and that Strough would "pay the costs of any such proceeding, including Deringer's reasonable attorney's fees." (Confidentiality and Trade Secret Agreement; App. at 12).

In the summer of 1994, Strough applied for employment with Fritz. Fritz contacted Strough on February 15, 1995, offering him a branch manager position. Strough indicated to a Fritz official that he had signed the Agreement with Deringer, but was told that he should not worry because the Agreement was unenforceable. On February 22, 1995, Strough resigned from Deringer and the following day began working for Fritz in the immediate vicinity of his previous employment with Deringer, although not as a salesman.

On March 3, 1995, Deringer brought the present action against defendants Strough and Fritz in Vermont Superior Court, seeking enforcement of the Agreement, damages arising out of the breach of the Agreement, and an award of attorney's fees and costs. On March 15, 1995, defendants removed the case to federal court on diversity grounds. On March 16, 1995, Deringer moved for preliminary injunction. Noting Deringer's likelihood of success on the merits based on Strough's current employment by Fritz, on March 21 the district court granted Deringer's motion for preliminary injunction and directed Strough to comply with the non-competition provision of the Agreement until the ninety day non-competition period expired on May 24, 1995. The court declined to consider hypothetical employment possibilities, but indicated that the parties might agree on an appropriate location in which Strough could work and if an agreement could not be reached, the court would hear further argument on the geographic scope of the Agreement. Fritz placed Strough outside the original geographic area of the Agreement and the parties did not return to court during the ninety day period.

On January 15, 1996, Fritz and Strough moved for summary judgment arguing that the Agreement was not enforceable. The following day, Deringer cross-moved for summary judgment and assessment of damages and attorney's fees. On February 28, 1996, the district court granted defendants' motion for summary judgment. *A.N. Deringer, Inc. v. Strough*, 918 F.Supp. 129, 133 (D.Vt.1996). The court found that although permitted by the contract, it was not empowered to declare the contract amended to the extent of a reasonable employment restriction because the ninety-day period had ex-

pired. *Id.* The court opined that although the ninety-day period of the non-competition provision was reasonable, the provision was not enforceable because its originally unamended geographic restriction was "unreasonably broad and without adequate justification." *Id.* at 132–33.

## DISCUSSION

█ The threshold question in this case is whether for the purpose of awarding damages, the district court erred in declining to finally resolve whether Strough's conduct was in breach of a reasonably restrictive non-competition provision. As a preliminary matter, the district court acting through another judge (Parker, J.), concluded that Strough likely had breached the contract's non-competition provision by reason of his employment in the same industry and in the immediate vicinity of his former place of employment. Thus, the district court granted injunctive relief. *Id.* The court determined that it was premature to consider the full breadth of the non-competition provision because conduct beyond that which would be prohibited by a reasonable restriction was not at issue.

Appellee argues that the court was correct in not resolving finally the issue of whether the conduct complained of was within a reasonable restriction for damages purposes. The only case cited in support of appellee's position on this issue is *Weatherford Oil Tool Co., Inc. v. Campbell,* 161 Tex. 310, 340 S.W.2d 950, 952–53 (1960), in which the court declined to reform a non-competition agreement to permit an award of damages, although injunctive relief was permitted on such a basis. We reject the rule of *Weatherford Oil Tool* and we note this statement of the *Weatherford Oil Tool* partial dissent:

> In the case at bar plaintiff brought a suit for injunction and for damages. This invoked the jurisdiction of the court. On the injunction feature of the case, we have held the trial court should apply the test of reasonableness to the contract, and should reduce the area set out to such area as was reasonable under all the circumstances ... It would be an anomaly to hold that in considering the question of damages to be

recovered the contract could not likewise be reduced to cover a reasonable area, and, therefore, hold the contract to be valid as to such reasonable area. In this reasonable area such damages as plaintiff could show it suffered during the one year period could be recovered. To apply two entirely different rules to the construction of the same contract between the same parties in the same lawsuit would lead to a multiplicity of suits, hopeless confusion and inconsistency.

*Id.* 340 S.W.2d at 955 (Griffin, J., dissenting in part).

In this case the court imposed a preliminary injunction based on its view that Strough's conduct was within the range of conduct forbidden by a reasonable restriction. Damages should be awarded on the same basis, if it is finally determined that under Vermont law the contract may be so reformed and the conduct engaged in was violative of the reformed contract. The question cannot be avoided on the basis that it is too late for the court to declare finally what in essence has been declared preliminarily. Otherwise, every action for damages based on such a provision would require resolution before the expiration of the time period of the restriction. This is impractical, unnecessary, and would encourage longer temporal restrictions; whereas public policy encourages as limited a restriction as is necessary to accomplish a valid purpose. *See Fine Foods, Inc. v. Dahlin,* 147 Vt. 599, 523 A.2d 1228, 1231 (1987).

█ The issue which need not be resolved in this case is the very issue that the district court resolved against appellants. As will be discussed, the contract may be reformed and the conduct complained of breached a properly reformed contract. Thus, there is no need to determine whether the full breadth of the originally drafted non-competition clause may be enforced. The only conduct complained of is that which occurred within the first thirty days of the provision's enforcement. We need only examine the contract in relation to this conduct, not in relation to hypothetical conduct.

■ This brings us to the issue of whether Vermont would enforce a non-competition provision which calls for the application of the provision to the extent allowable if it is defective in any way. While this issue is novel in Vermont, in a New Hampshire case several reasonable non-competition clauses in a contract were upheld, even though the original drafted version of the contract contained another non-competition clause which was found to be unenforceable. *Technical Aid Corp. v. Allen*, 134 N.H. 1, 591 A.2d 262, 271–72 (1991). The New Hampshire court relied on the Restatement (Second) of Contracts § 184 (1979). *Id.* Section 184 reads as follows:

### § 184. When Rest of Agreement is Enforceable

(1) If less than all of an agreement is unenforceable under the rule stated in § 178, a court may nevertheless enforce the rest of the agreement in favor of a party who did not engage in serious misconduct if the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange.

(2) A court may treat only part of a term as unenforceable under the rule stated in Subsection (1) if the party who seeks to enforce the term obtained it in good faith and in accordance with reasonable standards of fair dealing.

. . .

Illustrations:

. . .

3. A sells his grocery business to B and as part of the agreement promises not to engage in that business "within the city where the business is situated or within a radius of fifty miles." The provision is fairly bargained for. A's promise involves an unreasonable restraint of trade because the business extends within the city and over a radius of only twenty-five miles. Although part of A's promise is unenforceable on grounds of public policy (§ 188), it is enforceable with respect to the city and twenty-five miles.[1]

Restatement (Second) of Contracts § 184(1),(2), illus. 3 (1979).

The Supreme Court of Vermont also has turned to the Restatement to aid it in deciding novel issues of contract law. *See, e.g., Breslauer v. Fayston Sch. Dist.*, 163 Vt. 416, 659 A.2d 1129, 1135 (1995) (citing Restatement (Second) of Contracts § 204 (1979)); *Paradise Restaurant, Inc. v. Somerset Enters., Inc.*, 671 A.2d 1258, 1263 (Vt.1995) (citing Restatement (Second) of Contracts § 158 (1979)); *Toys, Inc. v. F.M. Burlington Co.*, 155 Vt. 44, 582 A.2d 123, 126 (1990) (citing Restatement (Second) of Contracts §§ 33, 34 (1979)).

Moreover, enforcement of non-competition clauses to the extent found reasonable is permitted in numerous other jurisdictions. *See USAchem, Inc. v. Goldstein*, 512 F.2d 163, 168 (2d Cir.1975) (noting New York and Texas law allowing enforcement of restrictive covenant to extent valid); *Diversified Fastening Sys., Inc. v. Rogge*, 786 F.Supp. 1486, 1493–94 (N.D.Iowa 1991); *Weber v. Tillman*, 259 Kan. 457, 913 P.2d 84 (1996); Ferdinand S. Tinio, *Enforceability, Insofar as Restrictions Would be Reasonable, of Contract Containing Unreasonable Restrictions on Competition*, 61 A.L.R.3d 397 (1975).

For example, in *Central Adjustment Bureau, Inc. v. Ingram*, 678 S.W.2d 28, 36 (Tenn.1984), the Tennessee Supreme Court examined in an analogous case the modern trend "away from the all or nothing at all rule in favor of some form of judicial modification." *Id.* In discussing the modification of an overly broad non-competition clause, the *Central Adjustment Bureau* court noted that there are essentially two approaches to modifying restrictive covenants. *Id.* Some courts apply the "blue pencil" rule to strike an unreasonable restriction "to the extent that a grammatically meaningful reasonable restriction remains after the words making the restriction unreasonable are stricken." *Id.* The court also noted that the more recent trend, which it adopted, was the rule of reasonableness. *Id.* at 37. It

---

**1.** The non-competition provisions were upheld under § 184(1). *Technical Aid Corp.*, 591 A.2d at 271–72. The appellate court upheld the trial court's finding that the employer had not acted in good faith, making § 184(2) inapplicable. *Id.*

provides that unless the circumstances indicate bad faith on the part of the employer, a court will enforce covenants not to compete to the extent that they are reasonably necessary to protect the employer's interest 'without imposing undue hardship on the employee when the public interest is not adversely affected.'

*Id.* at 37 (quoting *Ehlers v. Iowa Warehouse Co.*, 188 N.W.2d 368, 370 (Iowa 1971)). Thus, we conclude that Vermont would permit enforcement of a defective restrictive covenant to the limit of its validity.

The last issue to be addressed is whether the conduct complained of here was within the scope of an enforceable restriction on competition. This issue was never addressed finally by the district court. As there are no factual issues to resolve and for reasons of judicial efficiency, we will apply the law to the undisputed facts, rather than remanding this issue for further consideration of the trial court.

 First, there is no real dispute as to a reasonable time restriction. The ninety-day period was quite short. *See Vermont Elec. Supply Co. v. Andrus,* 132 Vt. 195, 315 A.2d 456, 458 (1974) (approving five year restriction in non-competition agreement). It provided a reasonable time for notifying customers, to guard against involuntary disclosure of confidential information,[2] and for other organizational considerations. The district court found no defect in this aspect of the employment restriction and appellee's brief does not challenge this finding. *See A.N. Deringer,* 918 F.Supp. at 132.

The heart of appellee's position is that the geographic proscription was too broad because it prohibited employment within 100 miles of the listed Deringer offices along a broad stretch of the United States–Canada border. This provision, however, is modified easily by deleting from the list of Deringer offices all those other than the two or three offices in which Mr. Strough worked, or by merely applying a general rule of reason.

The district court in finding the proscribed area unreasonable alluded to a similar result based on geographic proximity.[3] *A.N. Deringer,* 918 F.Supp. at 133. It noted that Deringer's interests would be protected by prohibiting Strough's employment near his former sales territory, but that no additional protection would be gained by expanding the area to include a 100 mile radius from all Deringer offices. *Id.*

While it is true ·that non-competition agreements are narrowly construed by the courts and must contain time, geographic and/or industry limitations, *Vermont Microsystems, Inc. v. Autodesk, Inc.,* 88 F.3d 142, 149 (2d Cir.1996) (citing *Deringer,* 918 F.Supp. at 132–33 and *Fine Foods, Inc.,* 523 A.2d at 1230–31), the Vermont Supreme Court has upheld numerous restrictive covenants in employment and related business contracts. *See, e.g., Fine Foods, Inc.,* 523 A.2d at 1230–31; *Vermont Elec. Supply Co.,* 315 A.2d at 458; *Dyar Sales & Mach. Co. v. Bleiler,* 106 Vt. 425, 175 A. 27, 30 (1934); *Butler v. Burleson,* 16 Vt. 55, 56 (1844). The Vermont rule is that:

> enforcement will be ordered unless the agreement is found to be contrary to public policy, unnecessary for protection of the employer, or unnecessarily restrictive of the rights of the employee, with due regard being given to the subject matter of the contract and the circumstances and conditions under which it is to be performed. The burden of establishing such facts is on the employee.

*Vermont Elec. Supply Co.,* 315 A.2d at 458 (citing *Dyar Sales & Mach. Co.,* 175 A. at 30). The restriction as reformed seems not to run afoul of such concerns. Factors such as Strough's voluntary departure, his training at Deringer and his knowledge of confidential material would weigh in favor of enforcement of the reformed provision. *See Vermont Elec. Supply Co.,* 315 A.2d at 458. The Vermont court in examining the totality of the employment relationship· also likely

---

2. Strough was prohibited separately from revealing confidential information, but the brief cooling off period established in the non-competition provision would aid compliance with the separate confidentiality provision.

3. One of Strough's new offices was merely across the parking lot from his prior office.

would consider in Deringer's favor the following: that the restriction was for a short time period, that Strough was able to be placed in other Fritz offices, that he remained employed and that the disruption, if any, for ninety days was at such a low level that Strough and Fritz did not accept the court's invitation to attempt to reform the contract in a manner more to their liking. Finally, the court likely would look to evidence of bad faith, which might prevent reformation under the standards set forth in the Restatement (Second) of Contracts. *See* Restatement (Second) of Contracts § 184 (1979). No serious evidence of bad faith on Deringer's part was alleged, and in their brief appellees do not rely on "bad faith" as a reason not to reform the contract.

Accordingly, we find Strough's conduct violated a reasonable and enforceable employment restriction. The judgment of the district court is reversed and this matter remanded for calculation of damages, including attorney's fees as provided in the contract.