### James Dicks and Condotel Properties, Inc. v. Cary and Brenda Jensen

[768 A.2d 1279]

No. 00-102

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed February 9, 2001

44

*Kristen P. Swartwout* of *Crispe & Crispe*, Brattleboro, for Plaintiffs-Appellants.

*Kirsten A. Peske, Potter Stewart, Jr. Law Offices*, Brattleboro, for Defendants-Appellees.

**Johnson, J.** Plaintiff James Dicks appeals from an order of the Windham Superior Court granting summary judgment to defendants Cary and Brenda Jensen. Plaintiff claims that defendants violated the

Vermont Trade Secrets Act, 9 V.S.A. §§ 4601-4609, when they left plaintiff's employ at the Lodge at Mount Snow and solicited the Lodge's bus tour customers to start their own lodge in Bennington, Vermont. Plaintiff also alleges that defendants breached a fiduciary duty, the covenant of good faith and fair dealing, and intentionally interfered with business relations. We affirm.

Plaintiff has owned the Lodge at Mount Snow (Lodge) in Dover, Vermont since 1971. During the nonwinter months, the Lodge relies heavily on business from bus tours of senior citizen groups. These tours are run by organizers who return to the Lodge year after year. The bus tour industry is highly competitive with various hotel owners in the region aggressively soliciting business from the tour groups. In 1991, plaintiff hired defendants to manage the Lodge and market and run a bus tour business at the Lodge. The defendants worked without an employment agreement and ran most aspects of the Lodge's business. They were responsible for advertising, soliciting, and organizing the Lodge's bus tours. Securing tour groups to visit the Lodge involved mass mailings to lists of senior citizen tour groups collected through chambers of commerce, agencies on aging, and mail order catalogs throughout the Eastern United States. Because these mass mailings typically have a very low response rate, defendants had to send additional promotional material, followed by direct telephone solicitation. The telephone solicitations resulted in twenty to sixty actual bookings from an initial mailing of ten to fifteen thousand. Booking a tour required about six months of lead time.

In 1997, defendants left the Lodge to open their own competing lodge, the Autumn Inn, in Bennington. Defendants contacted Lodge customers to inform them of the move. They also solicited business from the Lodge's regular bus tour customers. Nine of eleven tours booked by defendants their first season were with customers who had reservations booked at the Lodge who canceled their reservations and rebooked with defendants.

Plaintiff filed suit alleging, inter alia, that defendants had misappropriated the Lodge's customer list, violating the Vermont Trade Secrets Act; that, in soliciting the Lodge's customers, defendants had breached their fiduciary duty and the covenant of good faith and fair dealing to plaintiff; and that defendants had tortiously interfered with the Lodge's business relations. The trial court, on a motion for summary judgment by defendants, ruled that defendants did not violate the Trade Secrets Act. The court noted that a customer list could not be a trade secret if the content was readily ascertainable

from publically available sources. Because the court found that the Lodge's customer list was not developed by "extraordinary effort," it was, therefore, readily ascertainable and not protected. As to the breach of fiduciary duty claim, the court held that this claim was more properly analyzed as a matter of tortious interference with business relations, and these claims were tried, resulting in a verdict for defendants.

On appeal, plaintiff alleges that summary judgment on the trade secrets claim was inappropriate because there were genuine issues of material fact as to whether the list is a trade secret. Plaintiff also claims that the court erred in treating his claim for breach of fiduciary duty, good faith and fair dealing as substantially the same as his claim for tortious interference with business activity.

## I. Vermont Trade Secrets Act

The Vermont Trade Secrets Act, 9 V.S.A. §§ 4601-4609, was enacted in 1996 to prevent the misuse of business information. The statute allows injunctive relief and damages for misappropriation of trade secrets. 9 V.S.A. §§ 4602, 4603. The Act was explicitly designed to displace other common law remedies for misappropriation of trade secrets. *Id.* § 4607. A "trade secret" is defined as:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that: (A) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.* § 4601(3).

We have not yet had occasion to consider the extent of trade secret protection in this context. The statute, however, is based on the Uniform Trade Secrets Act (amended 1985), 14 U.L.A. 437 (1990), which has been adopted in some form in forty-one states. See, e.g., S.D. Codified Laws § 37-29-1(4) (2000) (definition of trade secret); Wash. Rev. Code § 19.108.010(4) (2000) (same). Thus, in interpreting this statute we draw from the decisions of our sister states. See 9 V.S.A. § 4608 (the act shall be "construed to effectuate its general purpose to make uniform the law . . . among states enacting it"). Further, because the Uniform Act codifies the basic principles of

common law trade secret protection, see *Ed Nowogroski Ins., Inc. v. Rucker*, 971 P.2d 936, 942 (Wash. 1999), cases decided in the absence of a statute are also relevant.

As indicated by the statutory definition of trade secret, there are two components to the test for whether some information deserves trade secret protection. The first is whether the information has independent economic value that is not readily ascertainable to others; the second is whether reasonable efforts were made to maintain the information's secrecy. *American Credit Indem. Co. v. Sacks*, 262 Cal. Rptr. 92, 97 (Ct. App. 1989). Although the trial court based its decision primarily on the first element, plaintiff must satisfy both elements for his list to be protected under the statute.

It is not disputed that the customer list has independent economic value. Brenda Jensen admitted that at the time defendants opened their inn, they did not have the money to extend their marketing. By directly soliciting the Lodge's customers, defendants saved themselves the six months lead time that all parties agree is required to book a tour "from scratch." The issue between the parties on the first prong of the test is over the availability of the information. Defendants claim that because all the customers' names were available in public documents, the information was readily ascertainable. Plaintiff counters that securing an actual paying customer required considerable time and expense that defendants saved when they solicited the Lodge's customers.

A customer list can be a protected trade secret. As the Ninth Circuit recognized, a list of people who have already purchased a product is substantially more valuable than a list of people who might only be interested in purchasing. *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1333 (9th Cir. 1980). The process of parsing a customer list from a directory of potentially profitable customers from entries not worth pursuing injects that list with value. See *id.* at 1332. But, the threshold amount of time and money that must be invested before a customer list is accorded statutory protection varies considerably. See *Republic Sys. & Program., Inc. v. Computer Assistance, Inc.*, 322 F. Supp. 619, 627 (D. Conn. 1970) (list of software purchasers must result from years of business effort and advertising and expenditure of time and money to be protected); *Lincoln Towers Ins. Agency v. Farrell*, 425 N.E.2d 1034, 1038 (Ill. App. Ct. 1981) (discussing cases where customer lists are protected

because they have been developed over many years or at considerable expense).

For example, the New York Court of Appeals was confronted by two different cases with very similar fact patterns involving customer lists and reached contradictory results. In *Town & Country House & Home Service, Inc. v. Newberry*, 147 N.E.2d 724 (N.Y. 1958), the plaintiff had established a personalized house cleaning business in which a team of workers cleaned each house. The plaintiff discovered prospective customers through random telephone solicitations in a selected neighborhood. Several hundred telephone calls yielded about a dozen customers. The defendants, who had been previously employed by the plaintiff, started a competing house cleaning business and solicited the plaintiff's customers. *Id.* at 727. In enjoining the defendants from soliciting the plaintiff's customers, the court emphasized that these customers were not readily ascertainable because they "had been screened by [the plaintiff] at considerable effort and expense." *Id.*

Although *Town & Country* appears analogous to the instant controversy, the court held that another similarly culled customer list was not protected. In *Leo Silfen, Inc. v. Cream*, 278 N.E.2d 636 (N.Y. 1972), the plaintiff sold building maintenance supplies to area businesses. The plaintiff contacted potential customers via mass mailings of about one million pieces annually. From that only .6% replied, and of the replies only 25% became customers. The defendant was discharged from the plaintiff's business and set up his own competing business, soliciting the plaintiff's customers. *Id.* at 638. The court found that because the plaintiff's customers were engaged in business at advertised locations, their names and addresses were readily ascertainable. *Id.* at 640. Despite the significant culling that these names underwent before becoming customers, the court held that the customer list was not a protected trade secret. *Id.* at 641. The court distinguished *Town & Country* by noting that the business in that case was attempting to "create a market for a new type of service." *Id.* at 640.

In determining that the Lodge's customer list was readily ascertainable, the trial court relied on two cases: *Stampede Tool Warehouse, Inc. v. May*, 651 N.E.2d 209 (Ill. App. Ct. 1995), and *Unistar Corp. v. Child*, 415 So. 2d 733 (Fla. Dist. Ct. App. 1982). There, customer lists were protected trade secrets because each of the lists in question involved information that was extremely difficult to ascertain. See *Stampede Tool*, 651 N.E.2d at 216 (list of "tool jobbers" requires

expensive "prospecting" from end users of the product); *Unistar*, 415 So. 2d at 734 (list of financial planners who sell investment grade diamonds requires extensive and costly "distilling"). These cases are not particularly helpful, however, because they concerned unique, highly specialized and narrow markets where we would expect the development of customer lists to require serious effort and expense. In other words, these cases do not present a close question on the issue of whether the list was "readily ascertainable." It clearly was not. As a consequence, the standard of "extraordinary efforts" applied in *Stampede* and *Unistar* is much more stringent than courts have applied in cases involving more pedestrian markets such as the ones at issue in *Town & Country*, 147 N.E.2d at 727 (house cleaners) and *Cream*, 278 N.E.2d at 637 (maintenance supplies). See also *Zoecon Indus. v. American Stockman Tag Co.*, 713 F.2d 1174, 1179 (5th Cir. 1983) (farming and livestock equipment customer list protected when gathered at "considerable expense"); *Newton Garment Carriers, Inc. v. Consolidated Carriers Corp.*, 673 N.Y.S.2d 631, 632 (App. Div. 1998) (trucking company customer list not protected where information was available in "public domain").

These cases demonstrate that in a trade secret case "no general and invariable rule can be laid down," but rather we must look to the conduct of each party and the particular information at issue. *Jet Spray Cooler, Inc. v. Crampton*, 282 N.E.2d 921, 925 (Mass. 1972). Indeed, several courts have held that whether information such as a customer list is a trade secret is a question for the trier of fact. E.g., *Hollingsworth*, 622 F.2d at 1335; *Frantz v. Johnson*, 999 P.2d 351, 358 (Nev. 2000); *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 862 (Ohio 1999). As we have stated repeatedly, "summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Bacon v. Lascelles*, 165 Vt. 214, 218, 678 A.2d 902, 905 (1996). Given the lack of a standard benchmark for "readily ascertainable" and the extremely factual nature of the inquiry, we cannot say that, as a matter of law, the Lodge's customer list is not a trade secret. Therefore, summary judgment on this issue was error. Because we can decide this case based on the second statutory element of trade secret, however, we affirm summary judgment on an alternate ground.

The second part of the definition of trade secret requires the party seeking protection to make reasonable efforts to ensure the

information's secrecy. 9 V.S.A. § 4601(3)(B). See also *McClary v. Hubbard*, 97 Vt. 222, 232, 122 A. 469, 473 (1923). It would be anomalous for the courts to prohibit the use of information that the rightful owner did not undertake to protect. Other jurisdictions have used several factors to determine the reasonableness of efforts to maintain the information's secrecy, including whether parties had a written agreement not to compete, *Zoecon Industries*, 713 F.2d at 1178, whether knowledge was confined to any restricted group of employees, *Jet Spray Cooler*, 282 N.E.2d at 926, and the extent of measures to guard access to the information, *Augat, Inc. v. Aegis, Inc.*, 565 N.E.2d 415, 418 (Mass. 1991). Thus the burden is on the plaintiff to demonstrate that he "pursued an active course of conduct designed to inform his employees that such secrets and information were to remain confidential." *Jet Spray Cooler*, 282 N.E.2d at 925. See also *Republic Sys. & Program.*, 322 F. Supp. at 627-28 (denying trade secret claim because information was not protected by "substantial element of secrecy" so that not obtainable without improper means). If the owner of the information has attempted to protect information, however, others who have access to it are under an obligation to respect those measures. *Lincoln Towers Ins.*, 425 N.E.2d at 1038 (inquiry includes whether employee acted in manner inconsistent with employer's interest by copying or memorizing the information).

In this case, there is no evidence in the record that plaintiff took any measures to indicate that the customer list was confidential. Plaintiff does not identify any agreement between the parties, written or oral, that encompasses an understanding that the customer list was confidential. Nor does plaintiff identify any procedures or measures taken to ensure that the customer list was secure and access to it restricted. In fact, defendants provided statements that the names of tour groups were posted on a large reservation board in an office where all employees and any office visitor could see. The customer names were not locked and were available to all employees. Plaintiff's response was only that at some point the Lodge stopped putting the full names of tours on the reservation board, and that the full names of the customers were kept in defendants' office. Absent any attempt by plaintiff to maintain the customer list's secrecy, enforcing just the first part of the statute would protect all business information that had independent economic value, without regard to the parties' own actions to protect it. This interpretation would render the second part of the statutory test superfluous. See *In re Margaret Susan P.*, 169 Vt. 252, 263, 733 A.2d 38, 47 (1999).

Moreover, to hold for plaintiff on this theory would convert the statute into an implied covenant not to compete. This Court has upheld such agreements in accord with basic contract law. *Fine Foods, Inc. v. Dahlin,* 147 Vt. 599, 602-03, 523 A.2d 1228, 1230 (1986). When enforcing a covenant not to compete, however, "we will proceed with caution . . . 'favoring the right of individuals to freely engage in desirable commercial activity.' " *Roy's Orthopedic, Inc. v. Lavigne,* 142 Vt. 347, 350, 454 A.2d 1242, 1244 (1982) (quoting *Vermont Elec. Supply Co. v. Andrus,* 132 Vt. 195, 198, 315 A.2d 456, 458 (1974)). Here no such agreement was signed. Given the restraint with which we enforce explicit covenants not to compete, we decline to imply a contract where the parties chose not to avail themselves of the legal device that offers the protection plaintiff seeks.

■ On the record before us, therefore, there is no dispute of material fact, and summary judgment is appropriate for this statutory element. See *Granger v. Town of Woodford,* 167 Vt. 610, 611, 708 A.2d 1345, 1346 (1998) (mem.); V.R.C.P. 56(c). Because plaintiff has adduced no evidence that he took reasonable efforts to maintain the secrecy of the customer information, we hold, as a matter of law, that this customer list is not a trade secret. Compare *NovaCare Orthotics & Prosthetics E., Inc. v. Speelman,* 528 S.E.2d 918, 922 (N.C. Ct. App. 2000) (customer list not protected under similar statute when "plaintiff has not come forward with any evidence to show that the company took any special precautions to ensure the confidentiality of its customer information"); with *A.M. Skier Agency, Inc. v. Gold,* 747 A.2d 936, 941 (Pa. Super. Ct. 2000) (customer list was protected when information was password protected on computer); see also *Augat, Inc.,* 565 N.E.2d at 418 (granting securities analysts access to information compromises secrecy of list); cf. *Stampede Tool,* 651 N.E.2d at 216 (customer list was protected when information was physically locked, subject to computer codes, and surveyed with security cameras).

■ Finally, plaintiff argues that even if his customer list does not meet the statutory definition of a trade secret, defendants were under a common law duty not to solicit the Lodge's customers. This argument fails because it is explicitly contravened by the Trade Secrets Act. Section 4607 states "this chapter displaces conflicting tort, restitutionary, and any other law of this state providing civil remedies for misappropriation of a trade secret." 9 V.S.A. § 4607. Thus the statute plainly bars a common law remedy on this theory.

## II. Breach of Fiduciary Duty; Covenant of Good Faith and Fair Dealing

Plaintiff next claims that the court erred in treating his claim for breach of fiduciary duty, and the covenant of good faith and fair dealing as co-extensive with his claim for tortious interference with business relations. The court allowed the tort claim to proceed to trial, and plaintiff lost. To prevail here, plaintiff must establish an independent cause of action for breach of fiduciary duty and the covenant of good faith and fair dealing. In support of this claim, plaintiff argues that defendants "left the Lodge with a one day notice . . . the Lodge was not prepared for the Defendants' abrupt departure . . . [and] work that should have already been done by the date Defendants left was unfinished."

■ Essentially, plaintiff is contending that defendants breached a duty of good faith and fair dealing implied in defendants' employment contract. Here, however, the contract at issue is an at-will employment arrangement. An at-will employment agreement is flexible, "terminable at any time, for any reason or for none at all." *Sherman v. Rutland Hosp., Inc.*, 146 Vt. 204, 207, 500 A.2d 230, 232 (1985). Just as the employer is free to terminate the employee absent a clear and compelling public policy reason against doing so, see *Payne v. Rozendaal*, 147 Vt. 488, 491, 520 A.2d 586, 588 (1986), so may the employee end the relationship as he or she chooses. That is precisely the case that confronts us here. Plaintiff's argument amounts to no more than an objection to the freedom of his employees to avail themselves of the at-will arrangement. Defendants did not breach any duty because "we decline to recognize the implied covenant of good faith and fair dealing as means of recovery where the employment relationship is unmodified and at-will." *Ross v. Times Mirror, Inc.*, 164 Vt. 13, 23, 665 A.2d 580, 586 (1995). See also *Gadbois v. Rock-Tenn Co.*, 984 F. Supp. 811, 820 (D. Vt. 1997).

Plaintiff's reliance on *Carmichael v. Adirondack Bottled Gas Corp.*, 161 Vt. 200, 635 A.2d 1211 (1993), is not persuasive. In *Carmichael*, the duty that was breached arose from a written contract for a petroleum gas distributorship. *Id.* at 202, 635 A.2d at 1213. Thus, *Carmichael* is completely inapposite. As we explained, the duty of good faith "is a concept that varies . . . with the context in which it is deemed an implied obligation." *Carmichael*, 161 Vt. at 208, 635 A.2d at 1216. In this context, there simply is no implied obligation of good faith and fair dealing. Therefore, we affirm the trial court's judgment on this issue.

See *Hudson v. Town of East Montpelier*, 161 Vt. 168, 170, 638 A.2d 561, 563 (1993) (we need not adopt trial court's rationale in affirming its conclusion).

*Affirmed.*