2005 VT 97

# Summits 7, Inc. v. Staci Kelly

[886 A.2d 365]

No. 04-242

Present: Reiber, C.J., Johnson and Skoglund, JJ., and Crawford, Supr. J. and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed August 19, 2005

*Wanda I. Otero-Ziegler* of *Paul Frank + Collins P.C.*, Burlington, for Plaintiff-Appellee.

*E. William Leckerling* and *Christina A. Jensen* of *Lisman, Webster, Kirkpatrick & Leckerling, P.C.*, Burlington, for Defendant-Appellant.

¶ 1. **Allen, C.J. (Ret.), Specially Assigned.** Defendant Staci Lasker* appeals the superior court's order enjoining her from working for a competitor of her former employer, plaintiff Summits 7, Inc., based on the terms of a noncompetition agreement entered into by the parties during Lasker's at-will employment with Summits 7. The principal issue in dispute is whether there was sufficient consideration to support the agreement. The superior court ruled that either Lasker's continued employment or the promotions and increased pay she received during her employment with Summits 7 was sufficient consideration to support the agreement. We agree with the superior court that Lasker's continued employment constituted sufficient consideration. Further, we discern no basis for granting Lasker's request that we reverse the superior court's judgment and remand the matter for the court to consider whether the geographic scope of the agreement's restrictions was unreasonably broad.

¶ 2. Summits 7, which is located in Williston, Vermont, provides printing, copying, and other related services to its customers. In January 2000, the company hired Lasker, who had an associate's degree in graphic arts technology, to work in its customer services department for ten dollars an hour. In April 2000, Lasker became a sales assistant and received a fifteen percent raise. Within the next

---

* Defendant's maiden name is Staci Kelly, but by the time of trial she was using her married name, Staci Lasker.

three months, she received another promotion and raise and, in November 2000, she was assigned to the sales department and given a $30,000 salary plus commissions. Lasker continued to assume greater and greater responsibilities with Summits 7, eventually becoming a supervisor. Her pay increased along with the additional responsibilities, reaching $39,000 in 2001, $49,000 in 2002, and $19,000 for the first three months of 2003 before she left her employment.

¶ 3. In January 2001, one year after Summits 7 hired her, Lasker signed a noncompetition agreement prohibiting her from working in Vermont, New Hampshire, or a designated part of New York for any direct or indirect competitor of Summits 7 for a period of twelve months "following termination of your employment for cause or a voluntary termination of employment." Lasker signed a second agreement containing similar language in October 2002 after Summits 7 purchased another company and expanded the kinds of services it provided. In April 2003, Lasker voluntarily terminated her employment with Summits 7. Two months later, in June 2003, she began working for Offset House, Inc., a competitor of Summits 7 located in nearby Essex Junction, Vermont.

¶ 4. In October 2003, Summits 7 filed a complaint seeking to enjoin Lasker from working for Offset House. Following a trial in April 2004, the superior court entered judgment in favor of Summits 7. The court enjoined Lasker from working for Offset House, extended the effective terms of the noncompetition agreement until March 30, 2005, and awarded Summits 7 $11,552 in attorney's fees. With respect to the principal point in dispute, the court opined that Lasker's continued employment with Summits 7 was sufficient consideration to support the noncompetition agreement, but concluded that it was unnecessary to reach that question because the substantial promotions and raises that Lasker received during her employment with Summits 7 were more than reasonable consideration to support enforcement of the covenant. The court also concluded that it did not need to determine whether the geographic scope of the agreement was unduly broad because even a narrow construction of the agreement would preclude Lasker from accepting work for a direct competitor of Summits 7 located within a short geographic distance from, and in a market served by, Summits 7.

¶ 5. On appeal, Lasker argues that the trial court erred by enforcing the noncompetition agreement because (1) the agreement was not supported by consideration, and (2) the court failed to consider the unreasonably broad geographic scope of the agreement. According to

Lasker, in an at-will employment context, continued employment means nothing because the employer has the right to terminate the employment at any time for any reason. Lasker further contends that the promotions and raises she received were not ancillary to the noncompetition agreements that she signed.

## I.

¶ 6. We start by examining the legal backdrop of the case. The common-law policy against contracts in restraint of trade is long-standing and firmly established, dating back to the time when the apprenticeship system ruled. See *Lake Land Employment Group of Akron, LLC v. Columber*, 804 N.E.2d 27, 30 (Ohio 2004); *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 539 (Wyo. 1993); 15 G. Giesel, Corbin on Contracts § 80.4, at 56 (rev. ed. 2003). In a relatively immobile society where workers entered skilled trades by serving in apprenticeships, covenants that prevented those workers from competing with their former employers had the potential to destroy a worker's livelihood or to bind that worker to his master for life. *Columber*, 804 N.E.2d at 30. With the onset of the industrial revolution and at-will employment relationships, modern realities have led courts to allow noncompetition agreements as long as they are narrowly written to protect the employers' legitimate interests. *Id.* Courts continue to carefully scrutinize noncompetition agreements, however, particularly with respect to employment contracts, which often result from unequal bargaining power between the parties. *Id.*; 1 H. Specter & M. Finkin, Individual Employment Law and Litigation § 8.01, at 443 (1989); Corbin on Contracts, *supra*, § 80.6, at 67, and § 80.15, at 128.

¶ 7. The modern approach to reviewing restrictive covenants is one of reasonableness. Courts seek to balance the employer's interest in protecting its business and investments, the employee's interest in pursuing a desired occupation, and the public's interest in the free flow of commerce. See Corbin on Contracts, *supra*, § 80.4, at 57-58 and § 80.6, at 63-65; T. Staidl, *The Enforceability of Noncompetition Agreements When Employment is At-Will: Reformulating the Analysis*, 2 Employee Rts. & Emp. Pol'y J. 95, 97 (1998); see also Restatement (Third) of Employment Law, Preliminary Draft No. 2 (May 17, 2004) § 6.05 cmt. a (rule allowing reasonably restricted noncompetition agreements balances desire to prevent anti-competitive effects of restrictive covenants with desire to encourage employer investments). Courts recognize that while an employer may seek to protect its legitimate interests through noncompetition agreements,

"the employer is not entitled to protection against ordinary competition." *Hopper*, 861 P.2d at 539. Hence, most courts have adopted tests resembling the one set forth in the Restatement of Contracts, which provides that a promise to refrain from competition that is ancillary to an otherwise valid transaction or relationship (such as an employment relationship) is unreasonable (1) if the restraint is greater than needed to protect the promisee's legitimate interest, or (2) the promisee's need is outweighed by hardship to the promisor and likely injury to the public. Restatement (Second) of Contracts § 188 (1981); see H. Specter & M. Finkin, *supra*, § 8.01, at 444-45; Corbin on Contracts, *supra*, § 80.6, at 69-70; see also Restatement (Third) of Employment Law, Preliminary Draft No. 2, *supra*, § 6.05 ("A court will enforce a restrictive covenant in an employment agreement to the extent that enforcement is reasonably tailored to protect a legitimate interest of the employer.").

¶ 8. But before examining the reasonableness of a noncompetition agreement to determine whether it is narrowly tailored in terms of geographical, temporal, and subject matter restrictions to protect the employer's legitimate interests, courts first consider whether the agreement is ancillary (connected and subordinate) to another valid contract and, if not, whether there is adequate independent consideration to support the agreement. See *Abel v. Fox*, 654 N.E.2d 591, 593 (Ill. App. Ct. 1995). These requirements are intended to ensure that the noncompetition agreement is not a naked restraint on trade but rather the result of a bargained-for exchange that furthers legitimate commercial interests in the context of another transaction or relationship. *Id.* at 595; T. Staidl, *supra*, at 97-98. As one commentator has stated:

> Even if a covenant is otherwise reasonable, a court will not enforce it unless it is ancillary to an agreement that has a purpose other than the restraint of competition. The rationale for this ancillarity requirement is that only if the restraint accompanies a valid transaction will there be the possibility of the unrestrained party having an interest deserving of protection that would perhaps outweigh the interest of the restrained party and the public.

Corbin on Contracts, *supra*, § 80.7, at 72.

¶ 9. For the most part, courts have generally assumed that the requirements of ancillarity or consideration are satisfied when the noncompetition agreement is made at the onset of an employment

relationship, even an at-will relationship. Corbin on Contracts, *supra*, § 80.7, at 73, and § 80.23, at 169. But see *Travel Masters, Inc. v. Star Tours, Inc.*, 827 S.W.2d 830, 832-33 (Tex. 1991) (because at-will employment relationship is not otherwise enforceable agreement, covenant not to compete executed either at inception of or during at-will employment relationship cannot be ancillary to otherwise enforceable agreement and thus is unenforceable as matter of law). The courts are split, however, on the principal question raised in this appeal — whether continued employment is sufficient, without additional independent consideration, to support a covenant not to compete entered into after an at-will relationship has begun. See Corbin on Contracts, *supra*, § 80.23, at 170-73; H. Specter & M. Finkin § 8.02, at 447-49; T. Staidl, *supra*, at 104-07; *Columber*, 804 N.E.2d at 30; *Hopper*, 861 P.2d at 541.

¶ 10. Many courts hold that continued employment alone is sufficient consideration to support a covenant not to compete entered into after the commencement of an at-will employment relationship. E.g., *Columber*, 804 N.E.2d at 32; *Camco, Inc. v. Baker*, 936 P.2d 829, 832 (Nev. 1997); see also Corbin on Contracts, *supra*, § 80.23, at 170 n.4 (citing cases); Restatement (Third) of Employment Law, Preliminary Draft No. 2, *supra*, § 6.05 cmt. d ("Continuing employment of an at-will employee is enough consideration to support an otherwise valid restrictive covenant. This means that parties may agree to enforceable restrictive covenants after the beginning of an employment relationship."). Some of these courts reason that the presentation of a noncompetition agreement is, in effect, a proposal to renegotiate the at-will relationship, and that the employee's acceptance of the agreement is given in exchange for the employer's forbearance from firing the employee. E.g., *Columber*, 804 N.E.2d at 32. Others reason that because employers can fire employees at any time with or without cause, every day of an at-will employment relationship is a new day, and thus there should be no distinction in disallowing noncompetition agreements for lack of consideration based on whether they are entered into at the beginning or during the relationship. E.g., *Copeco, Inc. v. Caley*, 632 N.E.2d 1299, 1301 (Ohio Ct. App. 1992).

¶ 11. Commentators have questioned this reasoning, noting that when a noncompetition agreement is entered into after commencement of the employment relationship, the employer can still fire the employee without cause, but the "new day" for the employee has dramatically changed in that the employee's ability to leave and pursue the same line of work with a new employer is significantly restricted.

E.g., T. Staidl, *supra*, at 104-05. In response to criticism citing the illusory nature of the promise of continued employment in an at-will relationship, some courts have required that the employment actually continue for a substantial period of time to suffice as adequate consideration for a noncompetition agreement. See, e.g., *Zellner v. Conrad*, 589 N.Y.S.2d 903, 907 (App. Div. 1992); *Mid-Town Petroleum, Inc. v. Gowen*, 611 N.E.2d 1221, 1226 (Ill. App. Ct. 1993); cf. *Mattison v. Johnston*, 730 P.2d 286, 290 (Ariz. Ct. App. 1986) (where employment continued after signing of noncompetition agreement until employee left her job, implied promise of employment plus continued employment provided sufficient consideration for agreement).

¶ 12. Other courts hold that continued employment alone is *not* adequate consideration to support a noncompetition agreement, but rather require some additional independent consideration such as increased compensation, a promotion, or other benefits. E.g., *Sanborn Mfg. Co. v. Currie*, 500 N.W.2d 161, 164 (Minn. Ct. App. 1993); *Poole v. Incentives Unlimited, Inc.*, 525 S.E.2d 898, 900 (S.C. Ct. App. 1999), *aff'd by* 548 S.E.2d 207 (S.C. 2001); *Hopper*, 861 P.2d at 541; see Corbin on Contracts, *supra*, § 80.23, at 173; T. Staidl, *supra*, at 106. "This view recognizes the increasing criticism of the at-will relationship, the usually unequal bargaining power of the parties, and the reality that the employee rarely 'bargains for' continued employment in exchange for a potentially onerous restraint on the ability to earn a living." H. Specter & M. Finkin, *supra*, § 8.02, at 450. Courts adhering to this view also require that the independent consideration be connected directly with the covenant not to compete. E.g., *Currie*, 500 N.W.2d at 164 (no evidence that increased compensation and promotions were attributable to anything other than employee's performance during employment relationship).

¶ 13. In Vermont, we have not addressed the issue of whether independent consideration beyond continued employment is necessary to support a noncompetition agreement entered into after the onset of an at-will employment relationship. Indeed, although our law on restrictive covenants is consistent with the reasonableness standard of other modern courts, it is limited. We have emphasized that we will proceed with caution when asked to enforce restrictive covenants against competitive employment because such restraints "run counter to that public policy favoring the right of individuals to freely engage in desirable commercial activity." *Vt. Elec. Supply Co. v. Andrus*, 132 Vt. 195, 198, 315 A.2d 456, 458 (1974) ("Restrictions on doing business or on the exercise of an individual's trade or talent are subject to scrutiny

for reasonableness and justification."); accord *Roy's Orthopedic, Inc. v. Lavigne*, 142 Vt. 347, 350, 454 A.2d 1242, 1244 (1982).

¶ 14. Our general rule is that a restrictive covenant in an employment context will be enforced

> unless the agreement is found to be contrary to public policy, unnecessary for protection of the employer, or unnecessarily restrictive of the rights of the employee, with due regard being given to the subject matter of the contract and the circumstances and conditions under which it is to be performed.

*Andrus*, 132 Vt. at 198, 315 A.2d at 458. In *Andrus*, we stated that the burden of establishing such facts is on the employee, *id.*; however, we note that while other courts have recognized that the employee has the burden of proving a failure of consideration, "[t]he employer has the burden of proving the reasonable necessity of the restrictive covenant." *NBZ, Inc. v. Pilarski*, 520 N.W.2d 93, 97 (Wis. Ct. App. 1994); see Restatement (Third) of Employment Law, Preliminary Draft No. 2, *supra*, § 6.05 ("The employer bears the burden of proving that a restrictive covenant complies with the requirements of this section."). This makes some sense because the employer generally would have access to facts that could demonstrate the necessity of a restrictive covenant.

¶ 15. The primary issue that Lasker raises in this case is whether the most recent noncompetition agreement she signed was supported by adequate consideration. We emphasize that Lasker has not challenged the agreement on the basis that it is unreasonable with respect to the type of restrictions imposed on her or whether those restrictions are narrowly tailored to address Summits 7's legitimate interests. Nor has Lasker contended that the agreement is unreasonable with respect to the length of time that it imposes restrictions on competition. Lasker does argue that the superior court erred by not addressing whether the geographic scope of the agreement was unreasonably broad, but, as we explain later, we need not consider this issue because Lasker plainly sought and obtained employment within a reasonably restricted geographic area, and the court may enforce the agreement to the extent that it is reasonable. Hence, if we conclude that the agreement was supported by adequate consideration, we will affirm the superior court's judgment in favor of Summits 7.

¶ 16. As noted, the trial court ruled that continued employment would be sufficient consideration to support the covenant not to compete, but that it was unnecessary to even reach that conclusion

because the increased compensation and promotions that Lasker received during her employment with Summits 7 were adequate consideration to support the covenant. We disagree with the latter determination. There is no evidence that Lasker's promotions and raises were connected in any way with the noncompetition agreements she signed. See *Currie*, 500 N.W.2d at 164 (no evidence that employee's promotions and salary increases were tied to noncompetition agreement or were attributable to anything other than performance that was expected of him under initial employment agreement). We can only assume that she received these promotions and raises because she performed her job well and was rewarded for that performance.

¶ 17. We also decline to give controlling weight to the fact that, by its terms, the noncompetition agreement could be enforced only if Lasker were fired for cause or left her employment voluntarily. One might argue that the agreement provided some incentive for Summits 7 not to fire Lasker without cause, but any such incentive did not constitute a tangible benefit beyond continued employment in exchange for signing the agreement. Indeed, the agreement explicitly states that it neither creates a contract of employment nor alters in any way Lasker's status as an at-will employee.

¶ 18. Nevertheless, we agree with the superior court, the majority of other courts, and the recent Restatement draft that continued employment alone is sufficient consideration to support a covenant not to compete entered into during an at-will employment relationship. See *Mattison*, 730 P.2d at 288 (although there is authority to contrary, most jurisdictions have found that continued employment is sufficient consideration to support restrictive covenant executed after at-will employment has begun); Restatement (Third) of Employment Law, Preliminary Draft No. 2, *supra*, § 6.05 cmt. d ("Continuing employment of an at-will employee is enough consideration to support an otherwise valid restrictive covenant. This means that parties may agree to enforceable restrictive covenants after the beginning of an employment relationship."). A noncompetition agreement presented to an employee at any time during the employment relationship is ancillary to that relationship and thus requires no additional consideration other than continued employment. See H. Specter & M. Finkin, *supra*, § 8.02, at 447 (majority of jurisdictions hold that restrictive covenant executed at any time during bilateral employment agreement is considered ancillary to agreement and therefore enforceable without additional consideration).

¶ 19. Moreover, because an at-will employee can be fired without cause at any time after the initial hire, the consideration is the same regardless of what point during the employment relationship the employee signs the covenant not to compete. See *Caley*, 632 N.E.2d at 1301 (there is no substantive difference between promise of employment upon initial hire and promise of continued employment during employment relationship); *Baker*, 936 P.2d at 832 (accord). As one commentator has noted,

> it is not logical for a court to treat differently a covenant presented on the first day of work and one presented one week after the first day in the at-will employment setting. While the contemporaneous nature of the exchange differs, both employees will be faced with the threat of not having a job if they choose not to sign.

T. Staidl, *supra*, at 103. Indeed, "the only effect of drawing a distinction between pre-hire and post-hire covenants would be to induce employers ... to fire those employees and rehire them the following day with a fresh covenant not to compete." See *Curtis 1000, Inc. v. Suess*, 24 F.3d 941, 947 (7th Cir. 1994).

¶ 20. In either case, the employee is, in effect, agreeing not to compete for a given period following employment in exchange for either initial or continued employment. Looked at another way, in either case the consideration is the employer's forbearance from terminating the at-will employment relationship. See *Columber*, 804 N.E.2d at 32 (employer's presentation of covenant not to compete to employee during at-will employment relationship, in effect, proposes to renegotiate terms of relationship; employee's assent to covenant is given in exchange for employer's forbearance from ending relationship). Regardless of what point during the employment relationship the parties agree to a covenant not to compete, legitimate consideration for the covenant exists as long as the employer does not act in bad faith by terminating the employee shortly after the employee signs the covenant. See *Zellner*, 589 N.Y.S.2d at 907 (forbearance of right to terminate at-will employee is legal detriment that can stand as consideration for restrictive covenant; where employment relationship continues for substantial period after covenant is signed, that forbearance is real, and not illusory).

¶ 21. Of course, the fact that a covenant not to compete is supported by consideration in no way deters the employee from later challenging the covenant as unnecessary to protect the employer's legitimate

interests or as unreasonable with respect to its temporal or geographic scope. For the most part, Lasker has failed to mount any such challenge to the instant noncompetition agreement, which is enforceable under its terms because Lasker voluntarily left her position with Summits 7 and shortly thereafter accepted a job with a nearby direct competitor. See T. Staidl, *supra*, at 120 ("[I]f an employee resigns voluntarily, no improper discharge is involved. Accordingly, enforcement of the covenant is fair because the employee knew that the covenant would restrict his employment opportunities elsewhere and he chose to depart nonetheless."); cf. *Andrus*, 132 Vt. at 199, 315 A.2d at 458 (noting that employee was not placed in double bind of being fired and of being subject to restrictive covenant because he voluntarily left his employer for very purpose of going into business competitively in same special field).

## II.

¶ 22. Lasker argues, however, that even if we determine that the noncompetition agreement is supported by adequate consideration, the case nonetheless must be reversed and remanded either (1) for a new trial so that the court can examine and limit the geographic scope of the agreement, or (2) with instructions for the trial court to limit the scope of the order to cover only her employment with Offset House. In support of this argument, Lasker cites *Lavigne*, 142 Vt. at 350-51, 454 A.2d at 1244, a case in which this Court reversed the superior court's conclusion that a noncompetition agreement was reasonably limited with regard to time and place and remanded the matter for a new trial because the court failed to make findings on the extent of the geographic area covered by the agreement. We discern no basis for remanding this case to the superior court to reconsider the reasonableness of the geographic scope of the restrictions imposed by the noncompetition agreement at issue.

¶ 23. Most modern courts agree that a trial court can enforce restrictive covenants to the extent that they are reasonable. Corbin on Contracts, *supra*, § 80.26, at 189 ("The rule for partial enforcement is the better rule, and courts should apply it in any case in which nothing is wrong with the agreement except that the parties have agreed upon a restraint that is somewhat in excess of what protection of the good will or other protectable interest requires."); see *A.N. Deringer, Inc. v. Strough*, 103 F.3d 243, 247-48 (2d Cir. 1996) (noting "modern trend" away from all-or-nothing rule and predicting that Vermont would permit enforcement of defective restrictive covenant to limit of its

validity); *Hopper*, 861 P.2d at 545-46 (noting that "[i]n the best considered modern cases," courts have enforced covenants not to compete against defendants whose breach occurred within plainly reasonable restricted area, even though terms of agreement imposed larger and unreasonable restraint). Thus, it may not be necessary for a court to determine the exact limiting boundary of a restriction so long as the employer can show that the employee breached a reasonable restriction. See Corbin on Contracts, *supra*, § 80.26, at 182-83.

¶ 24. In this case, the superior court found that Lasker "pursued employment with a direct competitor, within a short geographic distance and in precisely the market served by plaintiff." Based on this and other findings, the court enjoined Lasker from working for "Offset House or any other direct competitor of Summits 7." Lasker has not challenged the superior court's findings or argued, either here or before the trial court, that restricting her from working for Offset House or any other nearby direct competitor of Summits 7 was unreasonable or unnecessary. Further, to the extent that Lasker wants the superior court to establish a reasonable geographic limit so that she can know where she might work in the trade, that point is moot because the effective term of the noncompetition agreement has expired.

*Affirmed.*

¶ 25. **Johnson, J.,** dissenting. The majority emphasizes the close scrutiny that we must give to noncompetition agreements, but nonetheless enforces the present agreement based on illusory consideration and absent any assurance that the agreement is reasonable or is protecting any legitimate interest of the employer. Long after Staci Lasker began working for Summits 7, the company required her to sign an extremely broad noncompetition agreement forbidding her from directly or indirectly participating in any enterprise providing services related to those offered by Summits 7. The restriction on her employment was for one year following her termination for cause or voluntary resignation and covered all of Vermont and New Hampshire and part of New York. For signing this highly restrictive agreement, Lasker received nothing other than the right to continue the job that she already had. The majority holds that Summits 7's forbearance from firing her was sufficient consideration for requiring Lasker to sign the covenant not to compete. By finding consideration under these circumstances, the majority has eviscerated the public policy concerns requiring

consideration for — and close scrutiny of — covenants not to compete in employment relationships. Accordingly, I respectfully dissent.

¶ 26. A brief examination of the facts demonstrates that Lasker's continued employment is illusory consideration for her signing the noncompetition agreement. The day before Summits 7 presented the agreement to Lasker, she was an at-will employee who could be fired at any time with or without cause, but who was free to leave her employ at any time and seek any other job. The day after she signed the agreement, she was still an at-will employee who could be fired at any time for any or no reason, but she had lost her right to seek any other job after leaving her employ. Indeed, extremely broad restrictions were imposed on her ability to obtain work for which she was qualified anywhere near her home. The agreement created both a benefit to Summits 7 and a detriment to Lasker, but neither a benefit to Lasker, the promisor, nor a detriment to Summits 7, the promisee — less than a peppercorn! See *Bergeron v. Boyle*, 2003 VT 89, ¶ 19, 176 Vt. 78, 838 A.2d 918 (either benefit to promisor or detriment to promisee is sufficient consideration).

¶ 27. Because Summits 7 relinquished nothing, and Lasker gained nothing, any consideration was illusory. See *Gagliardi Bros., Inc. v. Caputo*, 538 F. Supp. 525, 528 (E.D. Penn. 1982) (continued employment was not adequate consideration to support noncompetition agreement because restricted employee received no corresponding benefit or change in status); *Sanborn Mfg. Co. v. Currie*, 500 N.W.2d 161, 164 (Minn. Ct. App. 1993) (no independent consideration exists unless employer provides real benefits beyond those already obtained by employee); *Lake Land Employment Group of Akron, LLC v. Columber*, 804 N.E.2d 27, 34 (Ohio 2004) (Resnick, J., dissenting) (continued employment is illusory consideration for signing noncompetition agreement in at-will employment relationship because employee has gained nothing while employer retains same right it always had to discharge employee at any time for any reason); *Poole v. Incentives Unlimited, Inc.*, 525 S.E.2d 898, 900 (S.C. Ct. App. 1999) (promise of continued employment to at-will employee is illusory because employer retains right to fire employee at any time).

¶ 28. The majority obscures the illusory nature of the consideration it finds here by suggesting that continued employment is sufficient consideration as long as the employer does not terminate the employment relationship in bad faith shortly after the agreement is reached. I find this reasoning illogical and unpersuasive. Whether there is

adequate consideration should be judged based on the expectations of the parties at the time they enter into the agreement. Applying a retrospective analysis to determine whether there was consideration gets us away from traditional notions of consideration and instead transforms an illusory promise into enforceable consideration through performance. T. Staidl, *The Enforceability of Noncompetition Agreements When Employment is At-Will: Reformulating the Analysis*, 2 Employee Rts. & Emp. Pol'y J. 95, 106 (1998); see 15 G. Giesel, Corbin on Contracts § 80.23, at 173 (rev. ed. 2003) (backward-looking analysis applies form of doctrine of promissory estoppel rather than traditional notion of consideration). In any event, the analysis does not work because, in the end, the employee still gained nothing but continued employment, a legally unenforceable promise, while the employer gained the benefit of the legally enforceable agreement without suffering any detriment. T. Staidl, *supra*, at 106.

¶ 29. As the majority recognizes, historically courts have closely scrutinized post-employment covenants not to compete. 1 H. Specter & M. Finkin, Individual Employment Law and Litigation § 8.01, at 443 (1989). Judicial scrutiny is necessary because such covenants are often the result of unequal bargaining power between the parties. *Id.* Employers may take advantage of that unequal bargaining power by imposing restrictions intended to ensure that their employees will not compete with them after they leave their employ. On the other side, employees interested in obtaining or keeping their jobs are likely to give scant attention to the hardship that they may suffer later through the loss of their livelihood as the result of the restriction on their future employment. *Id.* § 8.08, at 485. In the interests of free commerce and freedom to choose one's employment, courts have felt obligated to assure that restrictive covenants are aimed at protecting legitimate employer interests rather than restricting trade or competition.

¶ 30. Although these public policy concerns are ultimately addressed by determining whether the covenant in dispute is reasonably related to a legitimate employer interest and has reasonable geographic and temporal restrictions, the issue of whether adequate consideration exists for such covenants has become a flashpoint for those same concerns. In light of the increasing criticism of and restrictions upon at-will employment relationships, and the lack of any real bargaining between employer and employee when continued at-will employment is exchanged for restrictions on future employment, the "better view" is to require additional consideration beyond continued employment to support a restrictive covenant entered into during the employment

relationship. *Id.* § 8.02, at 450; *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 541 (Wyo. 1993); see *Currie,* 500 N.W.2d at 164 (when employer requires employee to sign covenant not to compete after employee has commenced employment, without giving employee any consideration beyond continued employment for signing the agreement, employer takes undue advantage of unequal bargaining power between parties). In short, the critical public policy concerns underlying close scrutiny of noncompetition agreements require us to "examine the extent and character of the consideration received by the [employee] to a degree perhaps not true in ordinary contract cases." Corbin on Contracts, *supra,* § 80.23, at 168 ("The common interest in an open market, with everyone free to buy and sell and exchange, causes the courts to scrutinize the consideration.").

¶ 31. In this case, Staci Lasker began working for Summits 7 in 2000 as a ten-dollar-an-hour employee and gradually progressed in the company. More than a year after she commenced her employment with Summits 7, the company required her to sign a noncompetition agreement severely restricting her post-employment rights. The trial court suggested in its decision that Lasker's general development as an employee — her learning how to handle increased responsibilities concerning the business — was adequate consideration for signing the noncompetition agreement. I concur with the majority's rejection of this position. An employee's development of skills during the employment period is neither adequate consideration nor a legitimate protectable interest of the employer sufficient to justify a restraint on trade. See *id.* § 80.16, at 146 ("[I]f the harm caused by service to another [employer] consists merely in the fact that the new employer becomes a more efficient competitor just as the first employer did through having a competent and efficient employee, courts should not enforce the restraint.").

¶ 32. The trial court also rejected Lasker's argument that requiring her to sign the noncompetition agreement upon threat of dismissal amounted to coercion. The court reasoned that because employers have a legal right to offer continued employment in consideration for signing a noncompetition agreement, requiring Lasker to enter into such an agreement in exchange for continued employment and/or other benefits was not coercive in nature. By engaging in this circular reasoning, the court avoided examining both the specific facts of this case and the public policy concerns that are at the heart of a strict-construction approach to noncompetition agreements. Lasker had argued that she did not really have a choice as to whether to sign the

agreement because her marriage was breaking up at the time and she had to stay financially solvent to support her two children. Her situation illustrates the unequal bargaining power that typically exists between employer and employee, particularly when the employer requires the employee to sign a noncompetition agreement upon threat of dismissal after the employee has become established in the job. Like Lasker, employees often have obligations and responsibilities that require them to stay with their job, even if it means signing onto an agreement that restricts their right to seek other jobs in the future. In such situations, employers should not be able to take advantage of their unequal bargaining power by requiring the employee to sign an agreement in exchange for mere continued employment. See T. Staidl, *supra*, at 118 (requiring employee to sign noncompetition agreement upon threat of discharge should be treated as irrefutably coercive in nature).

¶ 33. The existence of unequal bargaining power between employers and employees and the resulting restraint on trade require courts to carefully scrutinize covenants not to compete. See *Vt. Elec. Supply Co. v. Andrus*, 132 Vt. 195, 198, 315 A.2d 456, 458 (1974) ("Restrictions on doing business or on the exercise of an individual's trade or talent are subject to scrutiny for reasonableness and justification."). Yet, here, the trial court ceased its scrutiny of the noncompetition agreement upon ruling that it was supported by adequate consideration. After finding consideration for the agreement, the court never questioned whether the agreement was reasonable or based on any legitimate employer interest. But even assuming that adequate consideration existed, that fact should not have been dispositive of the case. As our case law demonstrates, the focus of cases involving noncompetition agreements should be on whether the employer had a legitimate protectable interest sufficient to justify the restraint on trade resulting from limiting the employee's future employment. See *id.* (restrictive covenants will not be enforced if they are "contrary to public policy, unnecessary for protection of the employer, or unnecessarily restrictive of the rights of the employee"). Unfortunately, that is not what occurred here.

¶ 34. It may be true that at trial Lasker emphasized the absence of consideration for the noncompetition agreement rather than the lack of a legitimate protectable employer interest. Nevertheless, Lasker did generally argue in her motion for partial summary judgment that the agreement was unreasonable and unduly restrictive of her rights. I agree with the majority that the employer, not the employee, should

bear the burden of demonstrating the existence of a legitimate protectable interest. *NBZ, Inc. v. Pilarski*, 520 N.W.2d 93, 97 (Wis. Ct. App. 1994) ("The employer has the burden of proving the reasonable necessity of the restrictive covenant."); Restatement (Third) of Employment Law, Preliminary Draft No. 2, *supra*, § 6.05 (employer bears burden of proving that restrictive covenant is reasonably tailored to protect its legitimate interests). Under the circumstances of this case, the trial court should have examined the reasonableness of the parties' agreement, including whether Summits 7 had a legitimate protectable interest.

¶ 35. In sum, I believe that requiring an employee to sign a post-employment covenant not to compete upon threat of dismissal, without conferring any benefit upon the employee other than continued at-will employment, which can be terminated at any time after the agreement is reached, is coercive in nature and unsupported by any real consideration. I would strike the agreement in this case for lack of consideration.