VERMONT SUPERIOR COURT
Bennington Unit
207 South St
Bennington VT 05201
802-447-2700
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 25-CV-02172



| Manchester Capital Management LLC v. Andrew Beresford et al |
| --- |

# ENTRY REGARDING MOTION

**Title:**        Motion for Preliminary Injunction and Emergency Temporary Restraining Order (redacted) (Motion: 3)
**Filer:**        David M. Pocius
**Filed Date:**   May 21, 2025

This case arises from Defendant Andrew Beresford's (Beresford) termination from Plaintiff Manchester Capital Management, LLC (Manchester) and subsequent employment with Chilton Trust Company (Chilton). Manchester is a wealth management firm that provides financial management services to wealthy clients. Beresford worked at Manchester from 2007 until June 2024, when Manchester terminated his employment. Beresford obtained employment with Chilton in August 2024.

Manchester asserts that Beresford's subsequent employment violates his Confidentiality Agreement and the LLC Operating Agreement. Specifically, Manchester avers that Beresford breached the Confidentiality Agreement by using advice strategies and confidential client information to attract and retain clients and breached the Operating Agreement by servicing former Manchester clients at Chilton. In contrast, Beresford insists that he did not solicit Manchester customers to follow him to Chilton. Rather, the clients followed Beresford to Chilton upon his announcing his termination.

On May 21, 2025, Manchester filed a Complaint and Motion for an Emergency Temporary Restraining Order and Preliminary Injunction. On May 27, 2025, this Court found that a temporary restraining order was unnecessary since no immediate and irreparable harm would result before the Defendants could be heard and scheduled a hearing for the preliminary injunction. The case was removed to the U.S. District Court for the District of Vermont and subsequently remanded back to this Court by stipulation of the parties. On July 21, 2025, Beresford filed an Opposition to Motion for Preliminary Injunction. Manchester responded with a Reply in Further Support of its Emergency Motion for Temporary Restraining order and Preliminary Injunction on July 22, 2025. This Court held oral argument on this matter on July 25, 2025.

The ruling on the motion, for the reasons herein, is:

1. Plaintiff's Motion for a Preliminary Injunction is denied.

**Standard**

Manchester's request for an injunction faces a high hurdle. "An injunction is an extraordinary remedy, the right to which must be clear." *Okemo Mountain, Inc. v. Town of Ludlow,* 171 Vt. 201, 212 (2000); *Comm. to Save the Bishop's House v. Medical Center Hosp. of Vt.,* 136 Vt. 213, 218 (1978); Vt. R. Civ. P. 65. Manchester's motion for preliminary injunctive relief requires the Court to balance several factors to assess the impact of granting or withholding the requested relief: "(1) the threat of irreparable harm to the movant; (2) the potential harm to the other parties; (3) the likelihood of success on the merits; and (4) the public interest." *Taylor v. Town of Cabot,* 2017 VT 92, ¶ 19, 205 Vt. 586, 596 (internal quotations omitted); *see In re J.G.,* 160 Vt. 250, 255 n.2 (1993) (noting same). Manchester must establish all the factors to obtain injunctive relief.

At this early juncture, Manchester has failed to carry the burden of establishing a basis for a preliminary injunction under Vermont law.

**Analysis**

I.      **Manchester has not established a likelihood of success on the merits since Beresford likely did not breach an enforceable agreement.[1]**

Manchester claims that it is likely to succeed on the merits because the Confidentiality Agreement and Operating are valid, and Beresford breached these contracts by servicing former clients at Chilton. In response, Beresford maintains that the non-service provision of the Operation Agreement is unenforceable, he did not breach the contracts because he did not solicit clients to follow him to Chilton, and he was required to announce his departure to his clients based on his fiduciary duties to them. Both parties cite extensively to other jurisdictions in their papers.

To show a likelihood of success on the merits, a movant "must show more than a mere possibility of success." *Six Clinics Holding Corporation, II v. Cafcomp Systems, Incorporated,* 119 F.3d 393, 402 (6th Cir. 1997) (citation omitted). A party seeking a preliminary injunction is "not required to prove his case in full ...." *Univ. of Texas v. Camenisch,* 451 U.S. 390, (1981). However, courts do require a "'reasonable certainty'" of success. *H. E. Fletcher Company v. Rock of Ages Corporation,* 326 F.2d 13, 17 (2d Cir. 1963) (quoting *Hall Signal Company v. General Ry. Signal Company,* 153 F. 907, 908 (2d Cir. 1907)).

---

[1] The Court's analysis sequence is based on the sequence Manchester presented in its Motion.

"As a contract consists of a binding promise or set of promises, a breach of contract is a failure, without legal excuse, to perform any promise that forms the whole or part of a contract." 23 Williston on Contracts § 63:1 (4th ed.). "Except insofar as the contract contains special provisions therefor, on breach of contract the injured party is entitled to recover and the guilty party is liable for the loss or injury resulting from such breach." 17B C.J.S. *Contracts* § 760.

The modern approach to reviewing restrictive covenants is one of reasonableness. Courts seek to balance the employer's interest in protecting its business and investments, the employee's interest in pursuing a desired occupation, and the public's interest in the free flow of commerce. *Summits 7, Inc. v. Kelly*, 2005 VT 97, ¶ 7, 178 Vt. 396. While an employer may seek to protect its legitimate interests through noncompetition agreements, the employer cannot protect against ordinary competition. *Id*. Such agreements are unreasonable (1) if the restraint is greater than needed to protect the promisee's legitimate interest, or (2) the promisee's need is outweighed by hardship to the promisor and likely injury to the public. *Id*. (citing Restatement (Second) of Contracts § 188).[2]

Here, the Court does not find that there is a reasonable certainty that Beresford breached the agreements. The Operating Agreements provides that, for twenty-four months after the withdrawal of a member, the member may not directly or indirectly solicit to render or render any brokerage business from any Manchester clients unless they are already a client of any successor advisor or otherwise specifically set forth in the on an instrument executed by Manchester. See Operating Agreement at Section 11.1. Manchester does not allege that Beresford solicited his clients to follow him after his Manchester termination. Instead, these clients followed Beresford to Chilton after he fulfilled his fiduciary duty of notifying his clients of his Manchester departure.

Moreover, the Court does not find that Manchester is likely to succeed in showing that Beresford breached the Confidentiality Agreement. The clients followed Beresford and supplied their information to Chilton on their own behalf. Beresford did not use this information to solicit Manchester clients to leave Manchester and join Chilton.

To the extent that the service provision prohibits Beresford from servicing clients that willingly followed him without solicitation, the agreement is likely unenforceable. The Court does not find that Manchester is likely to succeed in showing that the non-service provision of the Operating Agreement is an enforceable, reasonable restraint on competition in that it prohibits Beresford from servicing unsolicited former clients that followed him to Chilton for two years, with no geographic limitation. This would cause great hardship to Beresford and his loyal clients that still seek his services. The clients that left Manchester would be left without their broker that they followed to a new firm. Restricting clients from leaving to follow a former

---

[2] Manchester liberally cites to New York law in its Motion. Vermont's test differs from New York's test to determine if a restrictive covenant is reasonable. Under New York law, a restrictive covenant is reasonable if "it (1) is no greater in time or area than is necessary to protect the legitimate interest of the employer, (2) does not impose undue hardship on the employee, and (3) does not injure the public." *Portware, LLC v. Barot*, 815 N.Y.S.2d 495 (Sup. Ct. 2006). A finding of the promisee's need being outweighed by hardship to the promisor and likely injury to the public alone is sufficient to render a restrictive covenant unenforceable in Vermont.

employee, absent unlawful solicitation, is not a legitimate business purpose, nor is a two-year ban with no geographic scope narrowly tailored. Indeed, the persuasive authority Manchester relies on in its Motion dealt with non-service provisions in instances of unlawful, actual solicitation by the party in breach.[3] This is not the case here.

This case is also distinguishable from *Abalene Pest Control Serv., Inc. v. Hall*, 126 Vt. 1 (1966). There, the Court upheld a non-solicitation provision in an employment contract. *Id*. at 8–9. That contract, unlike this one, did not contain a complete ban on servicing clients absent any solicitation. Thus, Manchester has not shown that it is likely to succeed on the merits.

## II.   Manchester has not demonstrated a threat of irreparable harm that cannot be redressed by money damages.

Manchester claims that, absent injunctive relief, it will suffer irreparable harm because it will continue to lose clients to Chilton or someone else. Manchester cites to *Vermont Elec. Supply Co. v. Andrus*, 132 Vt. 195 (1974) in support of its position. Beresford contends that the harm is not irreparable, and Manchester has an adequate remedy at law.

In *Andrus*, the Court affirmed an injunction that enforced a non-compete provision in a contract. *Id*. at 200. The Court highlighted the fact that the employee voluntarily left his employer for the very purpose of going into business competitively in the same special field. *Id*. at 199. Additionally, the Court observed that the employee was not taking existing clients from his former employer but was using his knowledge of price factors to usurp potential jobs away from his former employer. See *id*. at 198–199.

Here, again, Beresford is not actively taking new clients away from Manchester. Instead, these clients chose to follow Beresford without solicitation. Further, Manchester has not shown that money damages are an inadequate remedy. To establish irreparable harm, the plaintiff "must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (citations and quotations omitted). The plaintiff must show that the harm is "actual and imminent, not remote or speculative." *Id*.

---

[3]   *Marsh USA Inc. v. Karasaki*, 2008 WL 4778239, at *20 (S.D.N.Y. Oct. 31, 2008) ("It is also plain that Karasaki directly or indirectly solicited Wirt, Tsumoto, Mei Chi, Shannon, Fujimoto, and Mandado."); *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 391, (1999) ("If the employee abstains from unfair means in competing for those clients, the employer's interest in preserving its client base against the competition of the former employee is no more legitimate and worthy of contractual protection than when it vies with unrelated competitors for those clients."); *Portware, LLC v. Barot*, 815 N.Y.S.2d 495 (Sup. Ct. 2006) ("Portware contends that Barot has improperly solicited and will continue improperly to solicit business on FlexTrade's behalf during the twelve-month period following the end of his employment at Portware."); *A.R.S. Servs., Inc. v. Morse*, No. MICV201300910, 2013 WL 2152181, at *13 (Mass. Super. Apr. 5, 2013) ("ARS has demonstrated that it will likely succeed in proving that Morse met with Daniel Bernazzani and William Lamb in order to solicit referrals from them, and that Morse intended to contact other ARS customers and clients.").

When "it appears that the applicant has an adequate alternate remedy in the form of money damages or other relief" the request for a preliminary injunction will ordinarily be denied. *Taylor v. Town of Cabot*, 2017 VT 92, ¶ 40, 205 Vt. 586 (citing 11A Wright & Miller, Federal Practice and Procedure: Civil § 2948.1 (3d ed.)). Manchester has demonstrated that it can reasonably calculate its lost profits from the clients that followed Beresford because they were existing clients, meaning that it can calculate its lost profits from losing these clients. Manchester has not provided evidence that Beresford is using confidential information to steal potential clients. This is distinguishable from stealing exiting clients or usurping opportunities like in *Andrus*. Accordingly, the Court finds that money damages can redress any potential harm because Manchester only alleges that existing clients followed Beresford.

### III. The balance of the equities and public interest disfavors an injunction.

Lastly, Manchester insists that the public interest and balance of the equities favor an injunction since the public is served by protecting client information, the covenants protect Manchester from unfair competition, and the potential harm to Manchester is great while the potential harm to Chilton and Beresford is negligible.

The Supreme Court has long held that "courts ... should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). If "the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant ..." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009).

Here, both factors disfavor injunctive relief. First, a preliminary injunction would prohibit Beresford from servicing and earning revenue from his former-Manchester clients that followed him. Second, and more salient to the Court, an injunction would harm Beresford's clients and the public interest.

There is a strong public interest in allowing customers to choose whom they want to manage their personal finances. Absent contractually prohibited solicitation, the public interest is served by allowing longtime clients of a broker to follow if their broker involuntarily leaves a firm. While the public interest is served by protecting confidential information and trade secrets, the facts presented show that the clients willingly gave their confidential information to Chilton when they joined the new firm, and Beresford did not use confidential information to get them to follow him. Finally, the public interest does not favor contracts that unreasonably restrict competition and free trade.[4]

---

[4] Manchester cites to *Travelers Indem. Co. of Am. v. Deguise*, 2006 VT 87, ¶ 10, 180 Vt. 214 to assert that the public interest favors reasonably written contracts. That case did not involve a services contract or a non-compete. Rather, it dealt with a lease agreement dispute and is inapplicable to this preliminary injunction factor. *Id.* at ¶ 3.

**Conclusion**

For the reasons stated, Manchester's Motion for a Preliminary Injunction is denied.

**Signed electronically August 7, 2025 pursuant to V.R.E.F 9(d).**

_____
**David Barra**
**Superior Court Judge**